DAVISON, Plaintiff-Respondent, v. WILSON, and others, Defendants: DAIRYLAND INSURANCE COMPANY, Defendant-Appellant.

*No. 66 (1974). Submitted on briefs December 2, 1975.—Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 38.)

For the appellant the cause was submitted on the brief of *Francis R. Croak, Robert F. Johnson,* and *Cook & Franke, S. C.,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *Alexander N. Rubin,* attorney, and *Harold A. Laufer,* of counsel, both of Milwaukee.

HEFFERNAN, J.    This action arose out of an automobile accident on December 10, 1970. Jimmie G. Davison commenced the action against Talmadge E. Wilson, the driver of the vehicle in which Davison was a passenger. Wilson was the named insured of an automobile liability policy issued by Dairyland Insurance Company. Because Davison, the plaintiff, and Wilson, the named insured driver, were both employees of the Wisconsin State Employment Service and were in the course of their employment, Dairyland Insurance Company declined to extend coverage, because of an exclusion clause in the policy issued to Wilson. By stipulation, the parties agreed to a court trial on coverage only. That trial resulted in a "judgment," holding that the exclusion was invalid and coverage was afforded. Appeal was taken following a subsequent judgment on the merits of the case.

We note in passing that the declaration by the court that coverage was afforded ought not to have been denominated a "judgment." It was an intermediate order, which affected the merits of the case. Such an order can be reviewed, like other intermediate orders, on an appeal from a judgment on the merits. Sec. 274.34, Stats. Accordingly, the trial court holding that the exclusion was invalid is reviewed as an intermediate order that affected the final judgment.

We agree with the trial judge's conclusion that the exclusion relied upon in this case was invalid, because the policy format did not comply with sec. 204.34 (5), Stats. In addition, we conclude that the exclusion is contrary to statutory coverage provisions and is contrary to public policy. We affirm.

The insurance policy issued to Talmadge E. Wilson obligated Dairyland Insurance Company:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"Coverage A, bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

However, in the section of the policy captioned, "Exclusions," appears the following provision, upon which Dairyland Insurance Company relies:

"This policy does not apply:

" . . .

"Under Coverages A

" . . .

"(h) . . . (2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

One reason why the trial judge said the exclusion was invalid was because it was "buried in the obscurity of two paragraphs that deal exclusively with workmen's compensation."

The trial judge also referred to the requirements of sec. 204.34 (5), Stats. That statute provides:

"Every policy of insurance, agreement of indemnity or bond referred to in sub. (1) shall afford coverage in respect to liability on account of bodily injury, sickness or disease, including death resulting therefrom, sustained by any person who is a passenger in or on the insured vehicle, or it shall state prominently on its face in contrasting color that such coverage is not afforded."

Our inspection of a certified copy of the policy shows it to have been printed throughout in green ink on white paper. The portion of the policy upon which Dairyland relies fails to show the exclusion in contrasting color and is in a type style identical to the rest of the policy. We deem that error fatal to the validity of the exclusion. It is apparent that the legislature considered it mandatory and necessary as a matter of public policy that insurers alert prospective purchasers that coverage afforded under the general insuring agreement would not be afforded under some circumstances. These exclusions from coverage cannot be considered valid, because the notice given to the purchaser of the policy was insufficient under the statutes.[1]

Although Dairyland argues that sec. 204.34 (5), Stats., applies only to a blanket exclusion of passengers in the insured vehicle and does not apply to the exclusion of passengers in specific fact situations as in the instant case, such assertion is not supported by the statute. The legislature did not distinguish between the exclusion

---

[1] See: Calumet Cheese Co., Inc. v. Chas. Pfizer & Co., Inc. (1964), 25 Wis. 2d 55, 61, 62, 130 N. W. 2d 290, requirements in respect to disclaimers from general contract provisions.

of passengers generally and the exclusion in respect to a specific situation. Whenever coverage for liability is denied to a passenger in the insured vehicle, the exclusion or denial of coverage must follow the format prescribed by sec. 204.34 (5).

The trial judge was also troubled by the public policy implications raised by the coemployee exclusion, and so are we. The particular exclusion is included in a section of the policy describing other situations warranting exclusion, and to which workmen's compensation is applicable. Although exclusion (h) (2) makes no reference to workmen's compensation, the exclusion was perhaps intended to deny coverage only under circumstances where the driver and the passenger are both subject to workmen's compensation from the same employer.

Exclusion (h) (2), however, is not rationally compatible with the other exclusions, (g) (1), (g) (2), and (h) (1),[2] of the same section of the policy. Those exclusions appear to be directed to the situation where the named insured is the employer. However, (h) (2) excludes coverage to *any employee,* including the named insured, who is involved in an automobile accident causing

---

[2] "(g) to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law or (2) other employment by the insured;

"(h) (1) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

"(h) (2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

injury to a coemployee in the course of the employer's business.

In Wisconsin, the fact that an employee may receive workmen's compensation from his employer for injuries sustained in the course of his employer's business does not prevent that employee from bringing an action against his coemployee tort-feasor. Sec. 102.29, Stats. Under the circumstances of this case, then, Davison may be entitled to workmen's compensation from the state of Wisconsin, and may also sue and recover tort damages from the negligent coemployee Wilson.

What public policy factors are there that warrant the exclusion of the named insured Wilson from the tort liability coverage of the policy he purchased? Only one motive is apparent to this court. By excluding coverage in the coemployee situation, the insurance company, to some extent, reduces its risk, and theoretically this should be reflected actuarially in the lowering of insurance premiums or, alternatively, in an increase in the company's rate of return. On the other hand, a miniscule reduction of premium is hardly a benefit to a named insured who is deprived of coverage in a situation to which his insurance would ordinarily apply.

The named insured by this exclusion is made personally liable for the total damages; and, significantly, the benefits of full insurance coverage under the tort action are denied the innocent passenger. The latter result is contrary to the consistent position of this court that the purpose of the omnibus provisions of the statute is to provide coverage to the insured and compensation to victims of automobile accidents. *Haines v. Mid-Century Insurance Co.* (1970), 47 Wis. 2d 442, 447, 177 N. W. 2d 328; *Krempel v. Noltze* (1969), 41 Wis. 2d 454, 459, 164 N. W. 2d 227; *Pavelski v. Roginski* (1957), 1 Wis. 2d 345, 349, 84 N. W. 2d 84. Hence, ambiguities in coverage are to be construed in favor of coverage, while exclusions

are narrowly construed against the insurer. *Lawver v. Boling,* ante, p. 408, 238 N. W. 2d 514.

The rationale which purports to justify the exclusion of an employee from coverage when the employer is the named insured under an automobile accident insurance policy is not applicable in this case, for in Wisconsin third-party tort actions can be brought by an injured employee.

In *Hunker v. Royal Indemnity Co.* (1973), 57 Wis. 2d 588, 204 N. W. 2d 897, we discussed the policy factors which show some rationality behind those exclusions which protect an employer and the employer's liability insurance company from common-law tort actions brought by injured employees. We said in *Hunker, supra,* page 608:

"The rationale that precludes a suit against the employer who gives up his common-law defenses is clear. It is less clear where the tort-feasor coemployee is protected. However, as pointed out in 2 Larson, *Workmen's Compensation Law,* p. 182 [now renumbered ch. 14, p. 39], sec. 72.20:

" '. . . The reason for the employer's immunity is the *quid pro quo* by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common-law verdicts.[3] This reasoning can be extended to the tortfeasor co-employee; he, too, is involved in this compromise of rights. Perhaps, so the argument runs, one of the things he is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault.'

"On the other hand, Larson makes the telling argument against extending immunity to the co-employee:

" 'If there is no strong reason of compensation policy for destroying common-law rights as to various classes of third parties, then, every presumption should be on the side of preserving those rights, once basic compensa-

---

[3] In some states, but not Wisconsin.

tion protection has been assured. The fundamental reasons for negligence liability are the same as they always were. The injured plaintiff has a right to be made whole —not just partly whole—and the more inadequate compensation recoveries appear, the more cogent becomes this argument. Moreover, all the reasons for making the wrongdoer bear the cost of his wrongdoing still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an *incentive to careful conduct* and safe work practices. [Emphasis supplied in *Hunker.*]

" 'It is true that a theoretical argument can be made to explain, for example, extension of immunity to co-employees, as has been indicated earlier. But all such arguments look rathor artificial when set against the practical realities involved in this kind of litigation. Except in an occasional suit against a corporate officer, most suits against co-employees would not be worth the bother except for the presence of liability insurance. If, then, an employee is injured by the negligence of a co-employee in the latter's operation of his automobile, the realistic question is whether the insurance carrier on the co-employee's automobile liability policy should enjoy a windfall, at the expense of the insured employee, by being able to interpose the defense of exclusive compensation remedy. When the matter is viewed in this light, there seems to be little modern justification for extension of tort immunity beyond the employer himself, who assumes real or potential compensation liability to the particular employee as his direct or statutory employer.' 2 Larson, *Workmen's Compensation Law*, p. 226.3 [now renumbered ch. 14, p. 95], sec. 72.50." (Pp. 608, 609)

As Larson points out, *supra:*

". . . the realistic question is whether the insurance carrier on the co-employee's automobile liability policy should enjoy a windfall, at the expense of the injured employee . . . ."

This is precisely what Dairyland sought in this case— a windfall at the expense of the injured employee and its own insured. It should be stressed that in this case the

named insured is not the employer. He is a fellow employee. He has not paid for workmen's compensation insurance, and he is afforded no protection thereby. He has paid for automobile liability insurance, but Dairyland seeks to deprive him of its coverage and benefits. By this exclusion in the policy, the ordinary risk of driving an automobile, in the instant case, becomes an uninsurable risk. Unlike the employer or even the injured coemployee, the named insured driver, by virtue of the fact that he is a coemployee, receives no *quid pro quo*. He is liable for the full measure of damages.

In the absence of insurance coverage, the named insured coemployee may well be judgment-proof, and the injured employee is deprived of his legal right to be made whole for the damages he has sustained. It is difficult to justify this result on the basis of a minor actuarial reduction in insurance premiums to the named insured employee who is deprived of coverage for a risk that usually ought to be covered by insurance. Both the named insured and the injured employee are, in this situation, effectively deprived of the rights that ordinarily inure to both the named insured and an injured party in the ordinary automobile accident.

The exclusion in the policy applies to all cross-employee suits even though the employer may not be required to have workmen's compensation coverage under the exceptions permitted by sec. 102.04 (1), Stats. The exclusion would thus immunize an automobile liability insurer even in cases where there was no possibility of a workmen's compensation award. The small or occasional employer not covered by workmen's compensation may himself be judgment-proof, and the exclusion would operate to exclude any coverage for the driver; and only an empty tort judgment would be available to an injured employee not eligible to have workmen's compensation benefits.

The exclusion is a senseless one and contrary to rational public policy. In those cases which have validated this particular exclusion, the driver was not, as in this case, the named insured. *See, e.g., Pyykola v. Woody* (1971), 52 Wis. 2d 342, 190 N. W. 2d 534; *Holmgren v. Strebig* (1972), 54 Wis. 2d 590, 196 N. W. 2d 655.

We agree with the concern of the trial judge in respect to important public policies which are adversely affected by the coemployee exclusion. He wrote in his opinion:

"This particular exclusion has the undesirable feature of discouraging car pools and other similar arrangements where the resources of the community could best be put to use with economy not only of vehicles but use of road space and fuel."

This court can also take judicial notice that, in the interests of state economy, the judges of this court frequently attend required judicial conferences and meetings concerned with judicial activities and do so by sharing each other's vehicles. Hundreds of state employees, like Wilson and Davison, have done likewise for the purpose of saving transportation expenses to the general public. If the coemployee exclusion is given the effect desired by Dairyland, no discreet or reasonable employee will offer a ride to another employee, since he is subjected to a risk which, under this exclusion, is uninsurable. Nor would any reasonable employee consent to be a passenger under those circumstances. This might very well have the result of putting more vehicles on the road, a factor that probably is conducive to greater risk exposure by insurance companies than car-pooling arrangements by coemployees.

We are also concerned with the contravention of the public policy expressed by the legislature in sec. 204.34 (4), Stats.:

"No policy of insurance, agreement of indemnity, or bond referred to in sub. (1) shall exclude from the cov-

erage afforded or provisions as to benefits therein, liability on account of bodily injury, sickness or disease, including death resulting therefrom, sustained by any person who is a named insured."

That section of the statute was enacted in 1961, Laws of 1961, ch. 583, to prevent a named insured from being excluded under his own policy from compensation for injuries and for the damages to which he would be entitled were he not the named insured. *Frye v. Theige* (1948), 253 Wis. 596, 34 N. W. 2d 793; *Schenke v. State Farm Mutual Automobile Insurance Co.* (1944), 246 Wis. 301, 16 N. W. 2d 817.

That much of the statutory intent is clear. Thus, under the state of facts here, and in view of the overriding impact of sec. 204.34 (4), Stats., had Wilson been a passenger in his own automobile and Davison the driver with Wilson's consent, Wilson would have been entitled to the full compensation arising out of a tort action brought against Davison and Davison would have been entitled to full insurance coverage. This is but an example of the coemployee exclusion working a bizarre and socially erratic result, for the passenger coemployee is excluded from liability insurance benefits.

True, we have in the past said that the omnibus coverage statute, although requiring that an additional insured be covered as fully as the named insured, does not prohibit giving the additional insured more coverage than the named insured. *Shanahan v. Midland Coach Lines* (1954), 268 Wis. 233, 239, 67 N. W. 2d 297. Initially, therefore, it appears that, at least in the circumstances hypothesized above, the coemployee's exclusion clause is contrary to the coverage statute, for the exclusion clause does not recognize the statutory provision for the benefit of the named insured—which is mandatory even though he be a coemployee. Although it is clear that sec. 204.34 (4), Stats., was enacted to enable a

named insured to be compensated for his own injuries, it is not clear that the statute does not do more. In respect to the named insured, sec. 204.34 (4) refers not only to "provisions as to benefits" but it also refers to "coverage afforded." If reference is made to the first three subsections of sec. 204.34, we see at once that the term, "coverage afforded," refers to the right of the named insured to indemnity. If the term, "coverage afforded," means the same thing in sub. 4 as it does in the preceding three subsections, then any exclusion which seeks to deprive a named insured from the right to be indemnified by his insurance company for tort liability is invalid. We do not believe that the statute should be interpreted that way, not because it is not susceptible to that interpretation, but because, under such interpretation, there could be no exclusion, for whatever reason, of the coverage afforded to a named insured. We are not, in light of the issues presented in this case, required to decide that question. The sweep of the legislative intent of sec. 204.34 (4) is not clearly apparent from the face of the statute. The statute is ambiguous and should be the subject of clarifying remedial legislation.

We conclude, however, that sec. 204.34 (4), Stats., evidences the clear legislative intent that policies which exclude a named insured from the benefits of his own insurance contract are contrary to public policy and void. An exclusion such as this one, which would in some instances deprive the named insured of benefits, *i.e.*, deny coverage to whoever was the coemployee driver, is unlawful. The exclusion cannot be sustained. It runs afoul of a specific statutory prohibition.

While some of the problems raised in this opinion may well require legislative attention beyond the ambit of cross-employee actions, in this case we go no further than to say that a coemployee exclusion clause which may have the effect of depriving a named insured of coverage

is invalid irrespective of the fact situation to which it is applied.

*By the Court.*—Judgment affirmed.