BERTLER, Plaintiff-Appellant, v. EMPLOYERS INSURANCE OF WAUSAU, and others, Defendants-Respondents.

Supreme Court

*No. 76–361. Argued October 31, 1978.—*
*Decided November 28, 1978.*
(Also reported in 271 N.W.2d 603.)

14

For the appellant there were briefs by *Harry F. Peck, Ralph Adam Fine* and *Petrie, Stocking, Meixner & Zeisig, S. C.,* of Milwaukee, and oral argument by *Mr. Peck.*

For the respondents there was a brief by *Robert C. Evans* and *Wimmer, Evans & Vollmar* of Waukesha, and oral argument by *Robert C. Evans.*

BEILFUSS, C. J. On May 7, 1974, the plaintiff David J. Bertler was working on the premises of his employer A. O. Smith Corporation in Milwaukee. Bertler was struck by a forklift vehicle operated by the defendant Kenneth A. Kulas, a co-employee. Both Bertler and Kulas were within the scope of their employment. Bertler was severely injured.

The plaintiff brought this action for his personal injury damages against Kulas and the defendant Economy Fire & Casualty Company, Kulas' homeowners liability insurer,[1] alleging Kulas was negligent.

The action was brought pursuant to sec. 102.29, Stats., which provides in part as follows:

"**Third party liability.** (1) The making of a claim for compensation against an employer or compensation in-

---

[1] Employers Insurance of Wausau, A. O. Smith's workers' compensation insurer, was also named a defendant but is not a party to this appeal.

surer for the injury or death of an employe shall not affect the right of the employe, the employe's personal representative, or other person entitled to bring action, to make claim or maintain an action in tort against any other party for such injury or death. . . ."

Economy Fire & Casualty brought a motion for summary judgment requesting the complaint be dismissed based primarily upon its policy's "business pursuit" exclusions. The exclusion in the policy is as follows:

> "**This policy does not apply:**
> "1. *Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:* . . .
> "d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

The trial court concluded Kulas was engaged in a "business pursuit" at the time of the injury to the plaintiff and granted the motion for summary judgment.

The issues before us on appeal are (1) whether operating a forklift in the course of employment falls within the "business pursuit" exclusion contained in the personal liability or homeowners insurance policy, and (2) if so, whether the application in co-employee situations violates Wisconsin public policy.

Under the terms of the personal liability and homeowners insurance policy issued to defendant Kulas, Economy Fire & Casualty Company "agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." It is not disputed that defendant Kulas is an "insured" and that the forklift accident in which plaintiff was injured is an "occurrence." The matter which is contested—and the issue before this court on appeal—is whether this occurrence falls within the "business pursuit" exclusion in the policy, thus relieving the insurer of the liability it would otherwise

have incurred by virtue of the general provisions of the insurance agreement.

Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Ehlers v. Colonial Penn Ins. Co.*, 81 Wis.2d 64, 74, 259 N.W.2d 718 (1977). These general principles were reiterated in *D'Angelo v. Cornell Paperboard Products Co.*, 59 Wis.2d 46, 49, 207 N.W.2d 846 (1973):

> "In interpreting and construing an insurance contract, '. . . the objective should be to ascertain the true intention of the parties.' *Home Mut. Ins. Co. v. Insurance Co. of North America* (1963), 20 Wis.2d 48, 51, 121 N.W.2d 275; *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis.2d 100, 104, 130 N.W.2d 185. Ambiguities in an insurance contract are to be resolved against the insurer who drafted it and in favor of the insured. *Kopp v. Home Mut. Ins. Co.* (1959), 6 Wis.2d 53, 94 N.W. 2d 224; *Luckett v. Cowser* (1968), 39 Wis.2d 224, 159 N.W.2d 94.
>
> "However, where no such ambiguity exists, the rule of strict construction against insurers is not applicable. *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis.2d 644, 190 N.W.2d 904; *Westerman v. Richardson* (1969), 43 Wis.2d 587, 168 N.W.2d 851. To do otherwise would be '. . . to bind an insurer to a risk which it did not contemplate and for which it was not paid. . . .' *Inter-Insurance Exchange v. Westchester, supra,* at p. 104."

While courts are to construe insurance contracts to give effect to the intentions of the parties, objective rather than subjective intent is the test. As was recently restated in *Cieslewicz v. Mutual Service Casualty Ins. Co.*, 84 Wis.2d 91, 97–98, 267 N.W.2d 595 (1978):

> "We have also held that an insurance policy should be construed as it would be understood by a reasonable person in the position of the insured. *Garriguenc v. Love,*

67 Wis.2d 130, 226 N.W.2d 414 (1975). The language of the policy is to be given the common and ordinary meaning it would have in the mind of a lay person. *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514 (1976)."

Homeowner's insurance is a combination of many of the property and liability types of insurance coverages purchased by the average insured to protect against risks arising both in the home and away from the home.[2]

While these policies combine both at-home and away-from home coverages, it has been said that "their primary function is to provide a package for the insured in his homeowner capacity." *Donovan v. Nettles,* 327 So.2d 433 (La. App. 4th Cir. 1976).

A concise statement of the function of general public liability insurance is provided in Long, *The Law of Liability Insurance,* sec. 10.01, p. 10–2:

"Sec. 10.01 **In General**
"The purpose of general public liability insurance is to indemnify the insured against loss by reason of legal liability to pay damages on account of bodily injury or property damage caused by accident and arising out of specified hazards. The coverage granted an insured under forms of public liability insurance depends on the insuring agreements, exclusions, and conditions of the policy purchased by him, but it may well not be coextensive with his legal liability to respond in damages on every occasion."

Frequently both the homeowner's and the public liability coverages are combined, as in the present case, in a single insurance agreement. The intended role of these two types of coverages should be kept in mind in construing the language in the exclusionary clause pertaining to business pursuits. The nature and purpose of the policy

---

[2] Appleman, Vol. 7A, *Insurance Law and Practice,* ch. 190, *Public and Private Coverages,* sec. 4501.10, p. 83.

as a whole has an obvious bearing on how far the insured could reasonably expect the scope of the exclusion to extend and whether the risk involved here is one the insurance company had in fact contemplated (or should have contemplated) in computing its rates.

The "business pursuits" exclusion is a common exception to the broad coverage provided in homeowners and general liability insurance policies. The reasons for this particular exclusion from the general coverage provided in the policy have been analyzed and summarized by various commentators. They are in substantial agreement.

Mehr and Cammack, *Principles of Insurance* (4th ed. 1966), give the following explanation for the provision:

> "The customary exclusions found in Section II of the homeowner's policy illustrate several of the . . . reasons for trimming down coverage. It excludes business and professional liability, a coverage not essential to every purchaser of this contract, and one requiring special underwriting and rating." Cited in Frazier, "The 'Business Pursuits' Exclusion in Personal Liability Insurance Policies," 572 Insurance Law Journal 519, 520 (1970).

Lawrence A. Frazier, in an article analyzing court decisions which dealt with the exclusion, made these assertions concerning its necessity and functioning:

> ". . . these exclusions are necessary for one or more of the following reasons: management of the moral hazard; keeping rates at a reasonable level; eliminating coverages that are provided by other contracts of insurance the insured is apt to have; eliminating coverages not needed by the typical purchasers of the contract; eliminating uninsurable perils; and eliminating specialized coverages that require special underwriting and rating." Frazier, "The 'Business Pursuits' Exclusion in Personal Liability Insurance Policies," 572 Insurance Law Journal 519 (1970), citing Kulp & Hall, *Casualty Insurance,* 4th ed. 1968 at p. 80.

In a 1977 update to his first article, Frazier amplifies his prior statement as follows:

"The comprehensive personal liability policy (and the several package policies that incorporate it) is designed to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activities. The hazards of personal activities are generally shared by, and common to, all those that constitute the pool being insured, but the hazards of their respective income-producing activities are diverse and involve different legal duties and a greater risk of injury or property damage to third parties than personal pursuits. Business activities can be insured by other types of policies. Their exclusion from personal liability policies avoids areas requiring specialized underwriting, prevents unnecessary coverage overlaps, and helps keep premiums low." Frazier, "The Business-Pursuits Exclusion Revisited," 1977 Insurance Law Journal 88, 89.

The "business pursuits" exclusion in Kulas' insurance policy is typical:

**"This policy does not apply:**
"1. *Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:* . . .
"d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

Section 8 a. of the policy, also phrased in customary language, defines the word "business" in these broad terms:

"1. a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes."

The New York court in *Home Insurance Co. v. Aurigemma*, 45 Misc.2d 875, 879, 257 N.Y.S.2d 980 (1965), analyzed the phrase "business pursuit" as follows:

"The meaning of the term 'business pursuit' as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording.

"Webster's Third New International Dictionary, Unabridged, defines the 'key words' in the subject policy as follows:

" 'Business. a commercial or mercantile activity customarily engaged in as a means of livelihood.'

" 'Trade. the business one practices or the work in which one engages regularly: one's calling: gainful employment: means of livelihood.'

" 'Pursuit. an activity that one pursues or engages in seriously and continually or frequently as a vocation or profession.' "

" 'Profession. a calling requiring specialized knowledge and often requiring long and extensive preparation including instruction in skills and methods.'

" 'Occupation. that which principally takes up one's time, thought and energies, especially one's regular business or employment, also whatever one follows as the means of making a livelihood.' "

And concluded at p. 880:

"There can be no dispute that the definitions announced for by laymen and those applied by the courts have in common the aforesaid *two factors of continuity and the profit motive*. Without these, neither laymen nor jurist would call the rendition of a service a business pursuit."

In *Fadden v. Cambridge Mut. Fire Ins. Co.*, 51 Misc.2d 858, 862, 274 N.Y.S.2d 235 (1966), the court held:

"To constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements."

██

This two-prong definition has been overwhelmingly followed in the jurisdictions which have addressed the issue.[3] In *Berry v. Aetna Casualty & Surety Company*, 221 So.2d 272 (La. App. 2nd Cir. 1969), the court applied the above definition within the context of a forklift accident identical to the one involved in the present case.

The language of the business pursuits clause itself and the expansive definition of the word "business" provided in the policy support the correctness of the definition of "business pursuits" explicitly adopted in other jurisdictions where this question has been expressly dealt with. The clear language of the policy combined with the generally accepted, valid rate-making reasons as to why such an exception would be included speak persuasively for the conclusion that it was not the intent of the parties at the time the contract was entered into to provide coverage sought in this case.

██

It cannot be disputed that Kulas' conduct in operating the forklift at the time of the accident, undertaken in the course of his employment, was regular activity engaged in with a profit motive. Further, it is not argued that this activity, otherwise excludable, is saved by the exception to the exclusionary clause for activities ordinarily incident to non-business pursuits. We therefore conclude that the "business pursuits" exclusion to Kulas' policy was intended to cover and does in fact encompass his forklift activities. It is further concluded that this exclusion, as applied in the present case, operates to preclude liability on the part of his insurer for any damages or injuries resulting from the 1974 occurrence and negligently caused by Kulas. To hold otherwise would re-

---

[3] Cf. cases reported in the two Frazier articles, *supra; see also* ALR annotation—Liability Insurance—" 'Business Pursuits,' " 48 ALR3d 1096 (1973) and 48 ALR3d 1096 (1978 Supp.).

quire this court to rewrite the insurance contract making the insurer liable for risks not included in the original rate-making calculations and not paid for by insured.

By operation of law and as a matter of public policy, an insurance agreement may be deemed to afford protection not explicit from or even contrary to its written terms.[4] The parties are chargeable with knowledge of the statutes and with the fact that policies cannot be issued in conflict with them. Missing terms required by a statute will be read into the policy. Terms in conflict with the statutes will be amended to conform to them. This must be the result even though increased liability not reflected in the original premium is the consequence.[5]

Having concluded that the "business pursuits" exclusion is broad enough to encompass defendant Kulas' activities thereby excluding them from the coverage provided under the insurance agreement, the question must be reached whether application of this provision so as to exclude from coverage liability for injuries to co-employees violates Wisconsin public policy.

Defendant Kulas' contention that the "business pursuits" exclusion as applied to the present fact situation is contrary to Wisconsin public policy is based on language in the cases of *Davison v. Wilson,* 71 Wis.2d 630, 239 N.W.2d 38 (1976), and *Dahm v. Employers Mut. Liability Ins. Co.,* 74 Wis.2d 123, 246 N.W.2d 131 (1976). In both cases this court analyzed the public policy underpinnings implicit in the "omnibus statute" relating to automobile liability insurance policies.

---

[4] *See Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis.2d 45, 170 N.W.2d 813 (1969); *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis.2d 335, 168 N.W.2d 581 (1969).

[5] *Smith v. National Indemnity Co.,* 57 Wis.2d 706, 714, 205 N.W.2d 365 (1973).

This statute, enacted in 1961 as sec. 204.34 and renumbered and essentially continued with only editorial changes in sec. 17, ch. 375, Laws of 1975, declares:

"(5) NAMED INSURED COVERED. No policy of insurance, agreement of indemnity or bond referred to in sub. (1) may exclude from the coverage afforded or benefits provided liability on account of bodily injury, sickness or disease, including death resulting therefrom, sustained by any person who is a named insured."

In *Davison* the plaintiff was injured while riding in an automobile driven by a fellow employee who was the named insured of an automobile liability policy containing a specific co-employee exclusion clause. The court considered the exclusion to be contrary to Wisconsin public policy as embodied in the omnibus statute and reached the following carefully worded conclusion: ". . . in this case we go no further than to say that a coemployee exclusion clause which may have the effect of depriving a named insured of coverage is invalid irrespective of the fact situation to which it is applied." *Davison v. Wilson,* 71 Wis.2d at 641, 642.

*Dahm* was also concerned with a co-employee exclusion clause. However the clause at issue there was part of the motor vehicle liability insurance policy of the employer of the co-employee parties involved in the accident. The court distinguished cases in which the named insured was the employer of the tortfeasor and the injured party from cases, like *Davison,* where the named insured was one of the co-employee parties to the action. Still within the framework of the omnibus statute and the underlying public policy it embodied, the court concluded, *supra,* at 131:

"Therefore, the fellow employee exclusion clause will violate no rule of law in this state if it is held to be valid only where the injured party and the tortfeasor are employees of the named insured under the policy, and

where the named insured employer is required to provide workmen's compensation coverage. The above holding is valid since *Davison* did not declare the fellow employee exclusion claim void under all circumstances, but only when it could deprive a named insured of coverage."

Defendant's reliance on the above two cases and the omnibus statute is misplaced. The omnibus statute does not require greater coverage to be extended than that extended to the named insured. It only requires that whatever the indemnity may be, whether broad or limited in scope, and whether required by statute or not— if given to the named insured, must be extended to those to whom the coverage of the policy was intended to be extended by the omnibus statute.[6]

In this case the insured is not deprived of coverage to which he might reasonably expect his insurance would ordinarily apply. Coverage is not denied here because a co-employee was injured, but because Kulas was engaged in a business pursuit at the time of the occurrence. When a named insured and all additional insureds are excluded in reference to some risk of coverage not required by public policy or statute, such exclusion is valid.

In *Cieslewicz v. Mutual Service Casualty Ins. Co.,* 84 Wis.2d 91, 103, 267 N.W.2d 595 (1978), this court declined to hold that insurance against multiple damages was against state public policy. The emphatic language of the opinion applies to the present case:

" 'Public policy' is no magic touchstone. This state has more than one public policy. Another and countervailing

---

[6] *Schenke v. State Farm Mut. Automobile Ins. Co.,* 246 Wis. 301, 16 N.W.2d 817 (1944), as cited in *Lukaszewicz v. Concrete Research, Inc.,* 43 Wis.2d 335, 341, 168 N.W.2d 581 (1968). *See also Schneider v. Depies,* 266 Wis. 43, 62 N.W.2d 431; *Ainsworth v. Berg,* 253 Wis. 438, 34 N.W.2d 790, 35 N.W.2d 911; *Shanahan v. Midland Coach Lines,* 268 Wis. 233, 67 N.W.2d 297 (1954).

public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided. *Cf., Price v. Hartford Accident & Indemnity Co.,* 502 P.2d at 524."

We conclude the "business pursuit" exclusion does not offend public policy because of our statute (sec. 102.29), which permits injured workers to bring actions against co-employees.

*By the Court.*—Judgment affirmed.