Robert VIDMAR, Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Defendant-Respondent-Petitioner,

Ruby MITCHELL, National Indemnity Company, a foreign corporation, City of Milwaukee, a municipal corporation, Defendants.

Supreme Court

*No. 80–410. Argued September 9, 1981.—Decided November 3, 1981.*

(Also reported in 312 N.W.2d 129.)

For the petitioner there were briefs by *John U. Schmid, Jr., Richard S. Baker* and *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee, and oral argument by *Mr. Schmid.*

For the appellant there was a brief by *Howard A. Davis, Patrick O. Dunphy* and *Habush, Habush & Davis, S.C.,* of Milwaukee, and oral argument by *Mr. Dunphy.*

DAY, J.   This is a review of a decision of the court of appeals, published at 99 Wis. 2d 398, 299 N.W.2d 288

(Ct. App. 1980), reversing a judgment of the Circuit Court for Milwaukee County: HAROLD B. JACKSON, JR., Circuit Judge, presiding.

The question on review is: Does a provision in an insurance policy that excludes coverage "for the operation of or damage, to non-owned automobiles" which are "emergency type automobiles" used or occupied by the insured in connection with his employment nullify the protection afforded to the insured by the uninsured motorists provisions of his auto policy.

We conclude that it does not and under the facts alleged in his complaint the plaintiff insured has stated a cause of action against his insurer.

On August 25, 1976, Robert Vidmar, a city of Milwaukee police officer, was driving a city-owned police vehicle in connection with his employment. While stopped at a stop sign the vehicle was hit by another vehicle which was uninsured and Officer Vidmar was injured.

He brought action under the "uninsured motorist" provisions of his policy issued on his private car against his insurer, American Family Mutual Insurance Company. His policy contained the following provision issued pursuant to sec. 632.32(3), Stats. 1975:[1]

---

[1] "632.32. **Required provisions for animal and automobile liability insurance.** . . (3) UNINSURED MOTORIST COVERAGE. (a) *Required coverage.* Every policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state and insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall provide therein or supplemental thereto in limits for bodily injury or death in the amount of at least $15,000 per person and $30,000 per accident under provisions approved by the commissioner, for the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The uninsured motorist bodily injury coverage limits provided in such a

"1. DAMAGES FOR BODILY INJURY CAUSED BY UNINSURED AUTOMOBILES. The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance, or use of such uninsured automobile; . . ."

The policy also contained the following exclusion, denominated "Endorsement 44," the interpretation of which is central to this litigation:

"EXCLUSION OF NON-OWNED EMERGENCY TYPE AUTOMOBILES. The insurance afforded under any of the Parts of this policy for the operation of or damage to non-owned automobiles shall not apply to such automobiles while used or occupied by

VIDMAR, ROBERT

in connection with his employment, occupation, or profession."

The trial court granted summary judgment in favor of American Family, stating that the policy did not provide coverage for Vidmar's accident. On appeal, the court of appeals reversed, holding that sec. 632.32 precludes excluding an insured from coverage under an uninsured motorists clause.

We affirm the court of appeals but on different grounds. We conclude that under the rules of construction applied to exclusion clauses in insurance policies, the clause used in the policy before us does not preclude recovery by the insured under the facts assumed here, *i.e.*, being hit by an uninsured motorist while driving an "emergency type vehicle in connection with his employment" as a police officer.

policy may be made available to the insured up to the bodily injury coverage limits provided in the remaining portions of the policy."

Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Ehlers v. Colonial Penn. Ins. Co.*, 81 Wis. 2d 64, 74, 259 N.W.2d 718 (1977). The goal of construction is to ascertain the true intentions of the parties to the insurance contract. *Home Mut. Ins. Co. v. Insurance Co. of N.A.*, 20 Wis. 2d 48, 51, 121 N.W.2d 275 (1963). However, the test is an objective, rather than subjective one. This court stated in *Garriguenc v. Love,* 67 Wis. 2d 130, 134–135, 226 N.W.2d 414 (1975) :

"In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean."

A construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless. *Stanhope v. Brown County,* 90 Wis.2d 823, 848–849, 280 N.W.2d 711 (1979).

Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. *Davison v. Wilson,* 71 Wis. 2d 630, 635–636, 239 N.W.2d 38 (1976). Words or phrases are ambiguous when they are reasonably susceptible to more than one construction. However, when the terms of an insurance policy are plain on their face, the policy should not be rewritten by construction to cover matters not contemplated by the insurer nor paid for by the insured. *Limpert v. Smith,* 56 Wis. 2d 632, 640, 203 N.W.2d 29 (1973).

Endorsement 44 limits the coverage offered "under any of the parts of this policy for the operation of or damage to non-owned automobiles." The uninsured motorists

coverage provided by the policy provides compensation for "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance, or use of such uninsured automobile." The issue before us is whether the uninsured motorists coverage is one of the categories of coverage referenced by Endorsement 44.

Since endorsements are generally written after the body of the policy, they will prevail if there is an irreconcilable conflict between endorsement and policy provisions. *Inter-Insurance Ex. v. Westchester Fire Ins. Co.,* 25 Wis. 2d 100, 105, 130 N.W.2d 185 (1964). However, the policy and the endorsement should be construed, if fairly possible, to give full effect to all words and provisions of both. *Id., see also, Riteway Builders, Inc. v. First National Ins. Co.,* 22 Wis. 2d 418, 420–421, 126 N.W.2d 24 (1964). Here, there is no conflict between the terms of the endorsement and the uninsured motorist coverage afforded by the policy. To the extent that the words "insurance afforded under any of the parts of this policy for the operation of or damage to non-owned automobiles" create an ambiguity as to the scope of coverage, we must resolve any such ambiguity against the insurer.

American Family would have us interpret Endorsement 44 to exclude Vidmar from all coverage while he is operating a non-owned "emergency type" automobile in connection with his occupation. Thus, they would have us interpret Endorsement 44 to read:

"EXCLUSION OF NON-OWNED EMERGENCY TYPE AUTOMOBILES. The insurance afforded under any of the parts of this policy . . . shall not apply to . . . VIDMAR, ROBERT [when using non-owned emergency type automobiles] in connection with his employment, occupation or profession."

However, this interpretation would render the language in Endorsement 44 referring to "for the operation of or damage to non-owned automobiles" superfluous, and we decline to do so if a construction which gives meaning to that phrase is fairly possible.

A more reasonable interpretation of the Endorsement 44 language is that it excludes Vidmar's liability coverage while he is using or occupying a police vehicle. The record on appeal does not contain a copy of the entire insurance policy.[2] Standard automobile liability coverage generally explicitly delineates various categories of vehicles for coverage purposes. An insured is generally covered while driving a nonowned vehicle, for injuries to the person or property of another for which he may be liable including, unless specifically excluded by the policy, damage to the nonowned vehicle itself. *See* N. Risjord and J. Austin, *Automobile Liability Insurance Cases: Standard Provisions And Appendix* (Supp. 1974), pp. 265–268; *see also* F. Blashfield, *Automobile Law and Practice,* sec. 316.8 (1966).[3]

[2] Generally, an appellate court will assume that omissions from the record would support the trial court's exercise of discretion. *See, Austin v. Ford Motor Co.,* 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979). However, this case is before us on a trial court's order for summary judgment, and the trial court's discretion is significantly curtailed. *Schlumpf v. Yellick,* 94 Wis. 2d 504, 512, 288 N.W.2d 834 (1980). Unlike *Austin, supra,* there is nothing in the record to suggest that the trial court had the benefit of the omitted materials in reaching its decision. Accordingly, we are not constrained to construe the missing portions of the record so as to affirm the trial court and reverse the court of appeals in this case.

[3] The policy may exclude coverage for damage to a nonowned automobile in charge of the insured, generally by excluding "property in charge of the insured" from coverage. *See generally,* cases discussed in Annot: *Scope of Provision of Automobile Liability Insurance Policy Excluding Liability for Damage to Property in Charge of Insured, or Variation of such Provision,* 10 A.L.R.3d 515 (1966 and 1981 Supp).

Accordingly, we conclude that it is reasonable to interpret the phrase "parts of this policy for the operation of or damage to non-owned automobiles" as referring to the liability portions of the policy, which specifically cover the insured while he operates a "non-owned vehicle." This interpretation of the scope of Endorsement 44 is also consistent with our perception that the increased risk incident to operating a police vehicle is of injury to the person or property of other people, or damage to the police vehicle caused by accidents occurring during high-speed chases, in setting up roadblocks, or similar activities.

The uninsured motorists coverage afforded by the policy applies when the insured sustains a bodily injury resulting from an accident for which an uninsured motorist may be liable. While the accident must arise out of the "ownership, maintenance or use" of the uninsured vehicle, the insured is covered regardless of the activity in which he is engaged at the time of the accident, be it driving a car, bicycling or walking.[4] What the in-

---

*See also, Middlesex Mutual Fire Ins. Co. v. Ballard,* 148 So. 2d 865, 867 (La. Ct. App 1963); *Northwestern Mut. Ins. Co. v. Haglund,* 387 S.W.2d 230, 233 (Mo. App. 1965); *MacDonald v. Hardware Mut. Ins. Cas. Co.,* 105 N.H. 458, 202 A.2d 489 (1964).

[4] The coverage provided by uninsured motorists insurance for the named insured was stated in R. Scherman, *Automobile Liability Coverage,* (1981) at pages 21–22:

"Generally speaking, uninsured motorist protection follows a category (1) *Insured* [(1) The named insured and, while residents of the same household, the spouse of any such named insured and relatives of either]; everywhere. He is covered while driving his own or a nonowned vehicle or occupying either one as a passenger, and is likewise covered while a pedestrian. As stated in *Motorists Mutual Insurance Co. v. Bittler,* [14 Ohio Misc. 23, 235 N.E.2d 745, 751 (1968)]:

" 'Thus, the uninsured motorists coverage was applicable, if, at the time of sustaining injury, Mr. Bittler, a named insured, was

sured is doing when he is injured is irrelevant to his coverage so long as the injury is caused by an uninsured motorist. The insurer may, subject to the statutory requirements set forth in sec. 632.32, Stats., limit the scope of coverage, but as the drafter of the policy, it must use clear language when doing so.

This court recently gave effect to a clearly drafted limit on insured motorists coverage in *Roe v. Larson,* 99 Wis. 2d 332, 298 N.W.2d 580 (1980). The exclusion at issue in that case read:

> " 'This policy does not apply: . . . Under the Uninsured Motorists Coverage, . . . (o) to bodily injury to an insured while occupying a highway vehicle (other than an insured automobile) owned by the named insured or by any person resident in the same household who is related to the named insured by blood, marriage or adoption, or through being struck by such a vehicle; . . .' " *Roe v. Larson, supra,* 99 Wis. 2d at 336.

In *Roe* this court determined that the exclusion did cover the claim at issue therein and then proceeded to evaluate the validity of the exclusion in light of the coverage mandated by sec. 204.30(5), Stats. 1973, (the precursor of sec. 632.32(3), Stats. 1975). In contrast, the clause before us does not mention uninsured motorist coverage.

---

occupying the Ford described in his policy, or was on foot or on horseback, or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile furnished for his regular use. . . .' "

*Accord: Northland Insurance Co. v. West,* 294 Minn. 368, 201 N.W.2d 133, 135–136, (1972); *Cannon v. American Underwriters, Inc.,* 150 Ind. App. 21, 275 N.E.2d 567, 571 (1972); *Rodish v. Standard Mut. Ins. Co.,* 44 Ill. App. 3d 949, 358 N.E.2d 1187, 1189 (1976); *Elledge v. Warren,* 263 So. 2d 912, 918–919, (La. Ct. App. (1972); *Allstate Ins. Co. v. Morgan,* 59 Hawaii 44, 575 P.2d 477, 479–480, (1978); *Bilbrey v. American Automobile Ins. Co.,* 495 S.W.2d 375, 376 (Tex. Ct. App. 1973); *Gulf American Fire & Casualty Co. v. McNeal,* 115 Ga. App. 286, 154 S.E.2d 411, 416 (1967). *See generally,* A. Widiss, *A Guide To Uninsured Motorists' Coverage,* sec. 2.8 (1969 and 1981 Supp.).

The intended purpose of a type of insurance coverage should be kept in mind when construing an exclusion from coverage. *Bertler v. Employers Insurance of Wausau,* 86 Wis. 2d 13, 18, 271 N.W.2d 603 (1978). The purpose of uninsured motorists coverage is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured. In view of this purpose, and applying the rules of construction pertaining to insurance policies, we conclude that Endorsement 44 does not limit Vidmar's uninsured motorists coverage.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). The majority and the dissenters engage in a heated skirmish over the plain meaning of the endorsement, their weapons the canons of statutory construction. I do not join this fray, because it is not the real battle. The real battle is what, if any, exclusions are permitted under sec. 632.32, Stats. 1979–80.

Although the majority says exclusions from uninsured motorist coverage are permitted, it is apparent from the majority opinion that *Roe v. Larson,* 99 Wis.2d 332, 298 N.W.2d 580 (1980), is a weak precedent and one to be avoided by construing the insurance policy in such a way that the court need not reach the issue of whether a particular exclusion violates sec. 632.32(4)(a), Stats. 1979–80.

I conclude, as did the court of appeals, that Endorsement 44, no matter how it is read, violates sec. 632.32, Stats. 1979–80. *See Roe v. Larson,* 94 Wis.2d 204, 287 N.W.2d 824 (Ct App 1979), *rev'd* 99 Wis.2d 332, 298 N.W.2d 580 (1980) (Abrahamson, J. dissenting). I therefore concur in the result.

COFFEY, J. (*dissenting*). I dissent from the majority's decision because it effectively rewrites and extends the insurance coverage afforded by the clear and unambiguous terms of the policy.

The insurance policy involved in this case is a standard automobile liability policy, including uninsured motorist coverage as required by statute.[1] This standard policy was modified by the addition of Endorsement 44. This endorsement was added because of the high risk associated with Vidmar's use of emergency-type vehicles in the course of his employment as a police officer. Rather than pay the higher premiums that would be required in order to insure against the extraordinary risks involved in his occupation, Vidmar and the insurance company agreed to exclude from coverage all liability and injury incurred while operating or occupying nonowned emergency-type vehicles.

The complete exclusion of these damages from any coverage provided in the policy is clearly provided for by the plain language of Endorsement 44 which states:

"The insurance afforded under any of the parts of this policy for the operation of or damage to non-owned automobiles shall not apply to such automobiles while used or occupied by

VIDMAR, ROBERT

in connection with his employment, occupation, or profession."

The meaning of the exclusion is further emphasized and clarified by the title of the endorsement which states: "EXCLUSION OF NON-OWNED EMERGENCY TYPE VEHICLES."

In addition, Vidmar's name is typed clearly in the center of the endorsement in such a manner as to clearly indicate that it was intended to exclude coverage of *Vidmar's* use of emergency-type vehicles. This addition of his name to the endorsement, along with a mere read-

[1] Sec. 632.32(3), Stats. 1975, now renumbered sec. 632.32(4)(a), Stats.

ing of the exclusion, undoubtedly supports the conclusion that Vidmar was aware of the meaning and extent of the exclusion and agreed to it. How can the exclusion be ambiguous when it specifically refers to the insured and his occupation?

A common sense reading of the endorsement and its title clearly excludes from coverage any and all injury sustained in connection with Vidmar's use of nonowned emergency vehicles in the course of his employment. Such exclusion does not relate to a specific coverage provided under the policy. Rather, it excludes all forms of coverage provided at any time Vidmar is using an emergency-type vehicle. Therefore, the majority's position that the endorsement does not exclude damages caused by an uninsured motorist must be rejected.

The majority's reasoning that the phrase "any of the parts of this policy" is limited to provisions that make coverage contingent upon Vidmar's occupation or operation of a nonowned vehicle; thus excluding uninsured motorist coverage is erroneous. There is no indication in the record that there is any portion of the policy entitled "Coverage for Occupation or Operation of Nonowned Vehicles." Ordinarily, the coverage provided by an insurance policy for nonowned vehicles is included within specific coverages such as liability coverage, collision coverage and uninsured motorist coverage. The majority's construction of the policy assumes just the opposite to be true although there is no copy of the policy in the record. The majority recognizes the general rule that an appellate court will assume that omissions from the record would support the trial court's exercise of discretion, citing *Austin v. Ford Motor Company*, 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979). Yet, they ignore this rule in their holding in this case. I dissented from the *Austin* decision because there, too, the majority recognized this rule and then proceeded to overturn the trial court's discretionary act of ordering a new trial.

*See: Austin v. Ford Motor Co.,* COFFEY, J. (dissenting), *Id.* at 648. In light of the holdings in both *Austin* and this case, it appears that most any case presents an exception to the rule supporting the trial court's exercise of discretion.

The majority's construction of the endorsement renders the entire provision useless. Although they recognize that a construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless, *Stanhope v. Brown County,* 90 Wis. 2d 823, 848–49, 280 N.W.2d 711 (1979), their construction of the endorsement involved in this case renders the phrase "under any of the parts of this policy" useless. *In fact, in this situation, it renders Endorsement 44 useless.* The majority's interpretation of Endorsement 44 is contrary to the well-established principle that the insurance policy and the endorsement should be construed, if possible, to give full effect to all words and provisions of both. *Riteway Builders, Inc. v. First National Insurance Co.,* 22 Wis. 2d 418, 420–21, 126 N.W.2d 24 (1964).

This court has repeatedly held that insurance contracts, like all contracts, are to be construed in a *reasonable* fashion so as not to lead to absurd results. *Olguin v. Allstate Ins. Co.,* 71 Wis. 2d 160, 165, 255 N.W.2d 903 (1975) ; *McPhee v. American Motorists Ins. Co.,* 57 Wis. 2d 669, 679, 205 N.W.2d 152 (1972). As we stated in *Kopp v. Home Mutual Ins. Co.,* 6 Wis. 2d 53, 94 N.W.2d 224 (1959) :

"Furthermore, policies of insurance are to be given a reasonable construction, and not one that leads to an absurd result. 13 Appleman, Insurance Law and Practice, p. 38, sec. 7386, and 44 C.J.S., Insurance pp. 1163, 1164, sec. 296." *Id.* at 57.

A more absurd result can hardly be contemplated than one which renders the clear and unambiguous language of a policy provision ineffective.

Any reasonable interpretation of the plain language of the endorsement results in a determination that the provision applies to the entire policy, including uninsured motorist coverage. The endorsement expressly excludes from coverage "insurance afforded under *any* of the parts of the policy" (emphasis supplied) for the operation of nonowned vehicles in connection with *"Robert Vidmar's"* employment. Thus, the provision clearly applies to the policy as a whole. Further, support for this reading of the endorsement is found in the fact that the uninsured motorist coverage incorporates Endorsement 44 since the provision for such coverage states that it is subject "to applicable terms of this policy." Endorsement 44 is clearly one of the applicable terms.

The majority's analysis relies on the rule of construction that the contract must be interpreted in light of "What a reasonable person in the position of the insured would have understood to be covered." *Patrick v. Head of Lakes Cooperative Elec. Ass'n.*, 98 Wis. 2d 66, 69, 295 N.W.2d 205 (Ct. App. 1980), citing *Ehlers v. Colonial Penn. Insurance Co.*, 81 Wis. 2d 64, 259 N.W.2d 718 (1977). Applying this rule, the majority concludes that the insured would not have realized that the exclusion extended to uninsured motorist coverage.

I submit, however, that no reasonable person in the insured's position would have believed that *any* coverage was provided for accidents occurring while using emergency-type vehicles in the line of duty as a policeman. The only reason the coverage afforded Vidmar under the policy differed from the standard automobile liability policy was that Vidmar was employed as a police officer. The addition of the endorsement was plainly for the purpose of excluding from coverage under *"any* of the parts of [the] policy" (emphasis supplied) damage caused by the high-risk nature of Vidmar's employment and this was agreed to by Vidmar as demonstrated by

his acceptance of the policy with the bold endorsement that specifically excluded coverage for use of emergency-type vehicles by *Robert Vidmar*. The effect of the provision was to put Vidmar in the same position as other average risk insureds when operating their own vehicles.

It cannot be doubted that the increased risk associated with Vidmar's employment included the risk of collision with an uninsured motorist. As a police officer in this state's largest metropolitan community, Vidmar is frequently called upon to use his automobile to force other vehicles to the side of the road or as a roadblock. Drivers who try to avoid being pulled over often collide with police vehicles in attempting to escape. These drivers try to escape for many reasons, including the fact that frequently they are in the act of committing a felony, fleeing a crime such as an armed robbery, the vehicle is stolen, unregistered or their driver's license has been revoked. In virtually all these cases, the driver is uninsured. It is reasonable to assume that both the insurer and Robert Vidmar were aware of this increased risk of collision with uninsured motorists and, in order to keep Vidmar's premium to a minimum, excluded it from the policy. The majority's construction of Endorsement 44 ignores the plain and unambiguous language of the policy and the reality of the increased risk of the collision with an uninsured motorist caused by Vidmar's employment as a police officer.

The majority's opinion also ignores the fact that Vidmar was covered for his injuries by his employer, the city of Milwaukee, through his worker's compensation benefits. Vidmar started this action solely to recover additional compensation for the personal injuries he allegedly sustained. Thus, any recovery under the uninsured motorist coverage of this policy is to a certain extent an additional or double recovery by Vidmar.

It is unrealistic to assert that Vidmar did not understand the extent of the exclusion encompassed in Endorsement 44. It would take highly sophisticated mental gymnastics on the part of the average insured to interpret the endorsement's application as being limited to those parts of the policy-making coverage contingent upon the use of nonowned vehicles, thus excluding uninsured motorist coverage. The construction adopted by the majority as to the average insured's reasonable belief is more a product of plaintiff's counsel's ingenuity than any realistic appraisal of the endorsement and its interpretation by the average insured.

The majority reasons that because the language of Endorsement 44 is ambiguous, it should be strictly construed against American Family and, therefore, holds that the uninsured motorist coverage is not affected by the endorsement. The author of this dissenting opinion recognizes that any ambiguity in an insurance contract is strictly construed against the drafter and that this is especially true when the provision under review is an exclusion from coverage. *Lawver v. Boling,* 71 Wis.2d 408, 420–21, 238 N.W.2d 514 (1976). But this rule has no application to the instant case which involves no ambiguity. *D'Angelo v. Cornell Paperboard Products Co.,* 59 Wis. 2d 46, 207 N.W.2d 846 (1972); *Reeves v. Midland Casualty Co.,* 170 Wis. 370, 174 N.W. 475 (1920).

This court has stated on numerous occasions that the rule of strict construction against the insurer should not be used to rewrite the insurance contract so as to bind the insurer to a risk which it was unwilling to assume, the result being that the insured pays the smaller premium yet receives more coverage than mutually agreed to and accepted by the insured. *Olguin v. Allstate Ins. Co.,* 71 Wis. 2d 160, 255 N.W.2d 903 (1975); *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis. 2d 45, 52–53, 170

N.W.2d 813 (1969). As the court stated in *Garriguenc v. Love*, 67 Wis. 2d 130, 226 N.W.2d 414 (1975) :

"However, when the terms of a policy are plain on their face, the policy should not be rewritten by construction to bind the insurer to a risk it was unwilling to cover, and for which it was not paid. Litigants should not be able to resort to rules of construction for the purpose of modifying the contract or creating a new contract; and a court need not resort to either construction or case law to bolster its recognition of that plain meaning." *Id.* at 135.

This case falls squarely within this principle and thus I cannot join in the majority's revision of the policy to afford coverage where none was intended. It can be assumed that the amount of Vidmar's premiums does not reflect the extraordinary risk of automobile accidents which is a fact of life associated with his employment. The result of the majority's decision is to require the insurance company and inevitably, other average risk insureds, to unfairly pay for the high-risk situation presented by Vidmar's employment. As assuredly as it is against public policy to avoid coverage where coverage is reasonably expected, so is it against public policy, under the guise of strict construction, to bind an insurer to a risk not covered under the express terms of the policy. Public policy does not usually require the average insured driver to pay the increased premiums necessary to cover another driver's operation of emergency-type vehicles for not all companies insure drivers in more hazardous occupations. There is no statutorily mandated risk-sharing plan governing personal insurers of persons "using emergency-type vehicles" like the pool established for insuring persons with unacceptable driving records. No man's personal insurer should be responsible for liability or injury arising from the use of emergency-type vehicles in the course of high-risk public occupations like that of a

policeman, fireman or ambulance driver unless he agrees to accept this increased risk.

The purpose of Endorsement 44 and the intent of the parties in including it in the policy is clear: to exclude from the coverage of the entire policy, the greater risks arising from Vidmar's use of automobiles in connection with his employment. Where the purpose of a provision of an insurance contract is clear through a reasonable examination of its plain language, it should be construed, not as the majority has done to defeat that purpose, but rather to accomplish it. *Rood v. Merchants Ins. Co.*, 240 Wis. 329, 337, 3 N.W.2d 353 (1942). I, therefore, respectfully dissent. I am authorized to say that Mr. Justice WILLIAM G. CALLOW joins this dissent.

STEINMETZ, J. (*dissenting*). I respectfully dissent from the majority opinion.

As the majority opinion is written, it has narrow application, that is, the insurance policy clause which is the subject of this action was not clearly written. Since there was an ambiguity in the meaning, it was interpreted against the interests of the company.

There is some language in the majority opinion which I believe to be dicta and with which I disagree as to its application to the law in Wisconsin. That language is:

"While the accident must arise out of the 'ownership, maintenance or use' of the uninsured vehicle, the insured is covered regardless of the activity in which he is engaged at the time of the accident, be it driving a car, bicycling or walking. What the insured is doing when he is injured is irrelevant to his coverage so long as the injury is caused by an uninsured motorist." (Footnote omitted.)

That statement suggests only one requirement for coverage and that is, the insured being injured by an uninsured motorist who is legally liable to the insured as a

result of the accident. However, the fact that the loss must arise out of the "ownership, maintenance or use of a motor vehicle" means the insured vehicle, not the uninsured vehicle.

This statutory requirement for uninsured motorist protection to accompany a liability automobile policy does not create an accident policy protecting the insured, no matter what his activity. His injuries must be caused by a legally liable uninsured motorist while the insured is engaged in an activity related to his ownership, maintenance or use of a motor vehicle. That is the coverage required by sec. 632.32 (4), Stats. If the company wishes to be competitive in the marketplace, it may grant greater coverage; however, it is not required to do so.

In this case, the company was obviously concerned with the insured policyholder's employment, a Milwaukee police officer. It, therefore, excluded all of his coverage, including uninsured motorist coverage, for times when he was involved in the "use" or "occupancy" while in an automobile not owned by him and used or occupied by him "in connection with his employment, occupation, or profession."

While in his employment as a police officer and either using or occupying a police vehicle, the dangers and extraordinary hazards are not only to third persons, but, in addition, to himself in the police vehicle. The company, therefore, excluded coverage to him for his possible liability to others in the use of the police vehicle and to uninsured motorist and medical payments protection for him while he used or occupied the "non-owned" police vehicle.

The exclusion in the policy reads:

"EXCLUSION OF NON-OWNED EMERGENCY TYPE AUTO-MOBILES. The insurance afforded under any of the Parts of this policy for the operation of or damage to non-owned automobiles shall not apply to such automobiles while used or occupied by

## VIDMAR, ROBERT

in connection with his employment, occupation, or profession."

This was a legal and legitimate exclusion which applied only to Robert Vidmar, the police officer, while working. It did not limit him otherwise, nor did it limit any of the defined insureds in the policy, *i.e.,* members of his household.

The language of the exclusion in this policy has a clear meaning and only one meaning when the words irrelevant to this case are eliminated from consideration. Those words are "or damage to." They must be ignored in interpreting the application of the clause to uninsured motorist coverage which applies only to personal injury sustained, not damage (physical) to a vehicle. This clause was written to apply to "any of the Parts of this policy" and that obviously was the reason for inclusion of the words "or damage to" which would be applicable to property damage coverages. When considering only the relevant words of the exclusion to the facts of this case, it is clear and unambiguous that the uninsured motorist coverage was not extended to Robert Vidmar under his automobile liability policy for the operation of a non-owned automobile (emergency-type vehicle) while such automobile was used or occupied by him in connection with his employment, occupation or profession.

The majority acknowledges that such a limiting coverage is legally permissible when it states:

"The insurer may, subject to the statutory requirements set forth in sec. 632.32, Stats., limit the scope of coverage, but as the drafter of the policy, it must use clear language when doing so."

In this case, the majority rules the limitation of coverage was not clearly stated, although permissible. I disagree and believe the limitation was clearly stated.

I would reverse the court of appeals.

I am authorized to state that Mr. Justice WILLIAM G. CALLOW joins in this dissent.