Susan MONFILS, as Special Administrator of the Estate of Thomas Monfils, Susan Monfils, and Theresa Monfils and John-Thomas Monfils, by Bruce R. Bachhuber their Guardian Ad Litem, Plaintiffs-Appellants,

v.

Marlyn CHARLES and United Paper Workers International Union Local 327, Defendants-Co-Appellants,

SECURA INSURANCE COMPANY, Defendant-Respondent,

Keith M. KUTSKA, Michael L. Piaskowski, Randy Lepak, Reynold C. Moore, Michael Hirn, Dale Basten, Michael L. Johnson, State Farm Insurance Company, Pekin Insurance Company and DEF Insurance Company, Defendants.

Court of Appeals

No. 97–1158. Submitted on briefs December 16, 1997.—Decided January 21, 1998.

(Also reported in 575 N.W.2d 728.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Bruce Bachhuber* and *Maria E. Milano* of *Hanaway, Weidner, Bachhuber, Woodward & Maloney, S.C.*, Green Bay.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *Scott D. Soldon, Naomi E. Soldon* and *Andrea F. Hoeschen* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael G. Grzeca* of *Michael G. Grzeca, S.C.*, Green Bay.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Susan Monfils, in her own right and as administrator of the Estate of Thomas Monfils, Theresa Monfils, John-Thomas Monfils, and Marlyn Charles appeal the granting of a summary judgment determining that the business exclusion provisions of Marlyn Charles's homeowner's policy excluded coverage for a claim made against Charles in his capacity as the president of the United Paper Workers International Union Local 327. The appellants first contend that coverage is required because the complaint does not allege the information necessary to support the application of the business exclusion. In the alternative, the appellants contend that summary judgment was improper because the evidence demonstrates that Charles's position as union president does not fall within the meaning of the business exclusion.[1] We conclude that the trial court erred by considering materials outside the appellants' complaint in determining Secura's duty to defend. We further conclude that Secura has not demonstrated that the business pursuits exclusion barred coverage. We therefore reverse the judgment.

The facts underlying this coverage dispute involve the violent death of Thomas Monfils, an employee of

[1] Our decision is the result of somewhat inconsistent arguments being offered by both groups of appellants. The plaintiffs argue that the trial court should not look outside the pleadings, and, alternatively, that there is an insufficient basis to support summary judgment because of the existence of a disputed material fact. Charles and the United Paper Workers, on the other hand, argue only that summary judgment was improper because the evidence demonstrates that the business exclusion in fact does not apply.

the James River Paper Mill in Green Bay, Wisconsin. Monfils's death is alleged to be the result of his informing the police that a fellow employee, Keith Kutska, was planning to steal a piece of company equipment. Kutska identified Monfils as the informant after obtaining a copy of Monfils's phone call to the police.

Kutska complained about Monfils's conduct to Marlyn Charles, the president of the Paper Workers local union of which both Kutska and Monfils were members. Charles allegedly counseled Kutska to confront Monfils, to make Monfils's action public among other workers within the mill, and to initiate disciplinary proceedings against Monfils under the union constitution and bylaws. This advice allegedly caused a confrontation between Monfils and union members that ultimately resulted in Monfils's death.

The complaint against Charles alleged negligence for, among other things, failing to use reasonable and ordinary care to protect Monfils, approving a plan of confrontation that placed Monfils in a situation likely to cause serious physical harm, and failing in his duty as union president to use ordinary care in resolving conflicts between union members.[2] Although Charles was the president of the local union, an elected position he had held for five years at the time of these incidents, the principal occupation upon which he relied for his livelihood was as a paper worker at the plant. Charles contends that he held the position of union president not for financial gain but rather because of its social value and his dedication to union principles and the advancement of the union members' best interests.

---

[2] The complaint raised other allegations by Charles including intentional acts. The dismissal of these allegations is not raised on appeal.

Charles was paid $68 per month for serving as president.

Charles's insurer under a homeowner's policy, Secura Insurance Company, moved for summary judgment, alleging that it owed no duty to cover Charles for the claims contained in the plaintiff's complaint. In support of its motion Secura offered Charles's affidavit explaining his duties as the president of the local union. After considering this affidavit, the trial court granted the motion and dismissed Secura from this action. The plaintiffs and Charles appeal.

At issue in this case is the scope of coverage under Charles's homeowner's policy issued by Secura Insurance Company. The policy indemnified Charles against negligence claims resulting in bodily injury or property damage.

The policy in question provided in part as follows:

**COVERAGE E—Personal Liability**

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable. "Damages" include prejudgment interest awarded against the insured.

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. OUR DUTY TO SETTLE OR DEFEND ENDS WHEN THE AMOUNT WE PAY FOR DAMAGES RESULTING FROM

THE OCCURRENCE EQUALS OUR LIMIT OF LIABILITY.

Elsewhere in the policy an exclusion entitled "Business Pursuit" provided that:

1. Coverage E—Personal Liability [coverage] do[es] not apply to bodily injury or property damage:

 . . . .

b. arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured.

This exclusion does not apply to:

(1) activities which are usual to non-business pursuit . . . .

The appellants raise two allegations of error in dismissing Secura from coverage. First, the appellants contend that the trial court erred by looking outside the four corners of the complaint to determine whether Secura owed a duty to defend Charles. *See, e.g., Professional Office Bldgs. v. Royal Indem. Co.*, 145 Wis. 2d 573, 581, 427 N.W.2d 427, 430 (Ct. App. 1988). The appellants argue that their complaint alleges negligent acts, and that the defense of those acts is therefore covered by the Secura policy unless the business pursuit exclusion applies. Because the pleadings leave doubts as to whether this exception applies, the appellants argue that Secura should not have been relieved of defending the suit. *See, e.g., Sola Basic Indus., Inc. v. USF&G*, 90 Wis. 2d 641, 646–47, 280 N.W.2d 211, 214 (1979) (doubts as to coverage resolved in favor of insured).

The respondents do not contest that the general rule is to determine the duty to defend only by the allegations within the four corners of the complaint. The respondents also do not contest that the complaint created an ambiguity as to coverage. Rather, they claim that because of this ambiguity the trial court could review Charles's affidavit to determine whether coverage existed. In support of this view the respondents rely solely on C. T. Dreschler, Annotation, *Liability Insurer—Duty to Defend*, 50 A.L.R.2d 458 (1956), an article expressly approved of in *Grieb v. Citizens Cas. Co.*, 33 Wis. 2d 552, 148 N.W.2d 103 (1967).[3] The respondents conclude that this article identifies an exception to the "four-corners" rule for ambiguous or incomplete complaints, and that the trial court therefore properly determined that Secura did not owe a duty of coverage after reviewing Charles's affidavit.

Although this ALR article at first blush appears to support the respondents' position that a court can review extraneous materials in considering coverage issues when the complaint is ambiguous or incomplete, a closer look at the article reveals that, in fact, the opposite is true. The article describes four exceptions to the general rule that a court must look only to the complaint in determining whether there is a duty to defend, including the case where the complaint consists of ambiguous or incomplete allegations. *Id.* The article goes on, however, to explain:

> Another special situation not covered by the general rule is presented in the case of a petition or com-

---

[3] The *Grieb* court identified four exceptions to the general rule as described in the ALR article. *Grieb v. Citizens Cas. Co.*, 33 Wis. 2d 552, 558, 148 N.W.2d 103, 106 (1967).

plaint containing ambiguous or incomplete allegations.

Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Id.* at 504. This text demonstrates that there really is no exception to the "four-corners" rule where the complaint is ambiguous. Rather, it supports the view that the appellants should prevail because there is, in fact, a doubt as to coverage. We conclude, therefore, that the trial court erred by dismissing Secura from its duty to defend by using materials outside the complaint to determine the existence of coverage.

The appellants further claim that the trial court erred by granting summary judgment because the business pursuits exception does not apply in this case. That is, the appellants argue that even if we looked to the affidavit offered by the respondents, summary judgment should not have been entered on their behalf because the materials demonstrate the exception does not apply.[4] We conclude that the evidence is insuffi-

---

[4]Under § 802.08(6), STATS., a court addressing a motion of summary judgment may award summary judgment to the party opposing the motion if that party is so entitled, even if that party has not moved for summary judgment. Because we conclude that the facts may not have been fully developed, however,

cient to demonstrate that the business pursuits exclusion warrants dismissal of Secura from the case.

■

When reviewing a summary judgment, we follow the same methodology as the trial court. *Bartel v. Carey*, 127 Wis. 2d 310, 313, 379 N.W.2d 864, 866 (Ct. App. 1985). That methodology is explained in many cases, such as *In re Cherokee Park Plat*, 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and we need not repeat it here. *Bartel*, 127 Wis. 2d at 310, 379 N.W.2d at 866.

■

The facts before us are not in dispute although they may not have been fully developed. The only issue is whether the trial court erred by interpreting the terms of the insurance contract along with these undisputed facts when it concluded that Secura owed no duty of coverage. The interpretation of an insurance policy is a question of law which is reviewed without deference to the trial court's determination. *Benjamin v. Dohm*, 189 Wis. 2d 352, 359, 525 N.W.2d 371, 373 (Ct. App. 1994). In construing the language of an insurance policy, the language is to be given the common and ordinary meaning it would have in the mind of a lay person. *Lawver v. Boling*, 71 Wis. 2d 408, 414, 238 N.W.2d 514, 517 (1976).

The insurance contract language to be applied is the exclusion of coverage for "Business Pursuits." The respondents argue that Charles's affidavit demonstrates that he meets the definition of that term as established under *Bertler v. Employers Ins.*, 86 Wis. 2d 13, 20, 271 N.W.2d 603, 607 (1978). The *Bertler* court, after reviewing the dictionary and cases from other

---

we decline to enter summary judgment on the appellants' behalf in this case.

jurisdictions, adopted a definition of "Business Pursuits" requiring both continuity and a profit motive. *Id.*
■

*Williams v. State Farm Fire & Cas. Co.*, 180 Wis. 2d 221, 227–28, 509 N.W.2d 294, 296–97 (Ct. App. 1993), dealt at length with the "Business Pursuits" exception and *Bertler*:

> The Wisconsin Supreme Court examined the business pursuit exclusion in *Bertler*, where an employee, who was struck by a forklift operated by a coworker, sued the coworker's homeowners liability insurer to recover his damages. The issue was whether the coworker's operation of the forklift in the course of his employment constituted a "business pursuit" within the meaning of the policy exclusion. The court held that it did, noting that in construing the extent of the business pursuit exclusion, "[t]he intended role of [homeowners and personal liability] coverages should be kept in mind" because "[t]he nature and purpose of the policy as a whole has an obvious bearing on how far the insured could reasonably expect the scope of the exclusion to extend and whether the risk . . . is one the insurance company . . . contemplated (or should have contemplated) in computing its rates." *Bertler*, 86 Wis. 2d at 18–19, 271 N.W.2d at 606.
>
> The [*Bertler*] court concluded that homeowners and personal liability policies were never intended to provide coverage for the "hazards associated with regular income-producing activities":
>
>> The . . . personal liability policy . . . is designed to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activities. . . . [T]he hazards of . . . income-

producing activities are diverse and involve different legal duties and a greater risk of injury or property damage to third parties than personal pursuits. Business activities can be insured by other types of policies. Their exclusion from personal liability policies avoids areas requiring specialized underwriting, prevents unnecessary coverage overlaps, and helps keep premiums low. *Bertler*, 86 Wis. 2d at 20, 271 N.W.2d at 606–07 (quoting Frazier, *The Business-Pursuits Exclusion Revisited*, 1977 INS. L.J. 88, 88–89).

The Bertler court then adopted a two-part test for the type of "business pursuit" covered by exclusions such as those at issue here:

To constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements. *Bertler*, 86 Wis. 2d at 21, 271 N.W.2d at 607.

We are unpersuaded that the facts of record establish that Charles's actions meet the *Bertler* standard. It is clear in this case that Charles's primary occupation was as a paper worker, not a union president. The record before us discloses that his union activities provided only nominal compensation, involved only intermittent work, and his unrefuted affidavit states

334

that union activities "never constituted activity for which [he has] relied upon as a means of livelihood, gainful employment, or means of earning a living." Further, Charles's affidavit states that:

10. The Union offices serve a social purpose for me. That is, I participate as an officer in the Union due to my belief in unionism, and desire to help my co-workers. I do not engage in Union activity in order to procure a profit.

We also note that the presidency is an elected position with the term of office limited to three years. While Charles held this office for five years, the necessity of re-election and the existence of only intermittent duties together with the nominal compensation and the lack of a profit motive are insufficient to classify his activities as union president a "business pursuit." While we conclude the evidence is insufficient to support a motion for summary judgment dismissing Secura from the case, we do not direct the entry of summary judgment in favor of Charles. The parties were uncertain as to the extent to which extraneous evidence could be used to determine the applicability of the business pursuits exclusion. Consequently, we believe they should have the opportunity to more fully develop the evidence before this issue is resolved by the trial court.

We observe in passing that both the respondents and appellants have briefed this issue as if the *Bertler* definition of "business pursuit" controlled the outcome. While the insurance contract does not define "business pursuit," it does define the term business. The contract states that " 'business' means any full or part time trade, profession, occupation or service done for mone-

tary or other compensation." Because neither side has addressed the issue whether this definition affects the *Bertler* definition, however, we do not address it.

The respondents' final argument is that they had no duty to defend because the allegations of negligence by Charles showed that no accident was involved. The respondents contend that the insurance agreement provides coverage for acts that are not simply negligent, but rather "occurrences" which are defined as accidents. They claim the actions involved here were not accidental. This argument, however, was not raised at the trial court level, and we therefore will not consider it. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980).

*By the Court.*—Judgment reversed and cause remanded.