In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2016

LaVerne Beyer, et al.,

Plaintiffs,

v.

Heritage Realty, Incorporated, et al.,

Defendants-Appellants.

Real Party in Interest:

   St. Paul Fire and Marine Insurance Company,

Intervenor-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 98-C-488--Aaron E. Goodstein, Magistrate Judge.

Argued April 2, 2001--Decided June 8, 2001


   Before Bauer, Cudahy, and Easterbrook,
Circuit Judges.

   Easterbrook, Circuit Judge. Heritage
Realty purchased a "Real Estate Agents
and Brokers Program Professional
Liability" policy from St. Paul Fire &
Marine Insurance Company. The policy
covers loss that "results from the
conduct of real estate agent or broker
duties". A class of customers sued
Heritage (plus its officers and an
affiliated firm, which we ignore to
simplify matters), contending that
Heritage had failed to comply with the
Real Estate Settlement Procedures Act of
1974, 12 U.S.C. sec.sec. 2601-17 (RESPA).
In particular, according to the
complaint, Heritage failed to disclose
its affiliation with Lighthouse Title
Services, Inc., which sometimes provided
title insurance in transactions that
Heritage initiated. RESPA does not
prohibit the purchase of services from
corporate affiliates but does require
disclosure and consent by a client in
possession of the facts. See 12 U.S.C.
sec.2607(c). By neglecting to make the
necessary disclosure, Heritage exposed
itself to damages up to treble its fees

for settlement services. 12 U.S.C. sec.2607(d)(2).

St. Paul intervened in the class action, seeking a declaration that its policy does not cover any noncompliance with RESPA. Conceding that the claims are presumptively covered by the policy, St. Paul relied on this exclusion:

Price fixing. We won't cover loss that results from any violation of any state or federal antitrust, price fixing, restraint of trade or deceptive trade practice law, rule or regulation . . . .

RESPA has nothing to do with antitrust or "restraint of trade" in general, or price fixing in particular. Nonetheless, St. Paul contends, RESPA is a "deceptive trade practice law" because it requires disclosure, and the lack of disclosure equals "deception" in the "trade practice" of obtaining title insurance. A magistrate judge, presiding by consent under 28 U.S.C. sec.636(c), agreed and entered a judgment providing that St. Paul need not defend or indemnify Heritage. The class action later was settled for $325,000, and Heritage contends on this appeal that St. Paul must reimburse this sum, plus its legal expenses.

Section 5 of the Federal Trade Commission Act, 15 U.S.C. sec.45, is the model "deceptive trade practice law." The FTC may ban "unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce." Heritage argued in the district court that the RESPA could not be a "deceptive trade practice law" because it is enforced by the Department of Housing and Urban Development rather than the FTC. The district court correctly rejected that position; why should it matter which agency enforced a particular statute? Many states have deceptive trade practice laws, which are enforced in many different ways. Perhaps the RESPA is a statutory application of sec.5's approach to the real estate settlement business. What sense could it make to exclude coverage for violation of RESPA-like rules from coverage, if made by the FTC, and not to exclude coverage for violation of similar requirements articulated by

the legislature? Failure to disclose a conflict of interest (which Heritage had but concealed) is a form of deception, and it does not stretch language unduly to call it a "deceptive trade practice" addressed by a law (RESPA) that covers other kinds of deception as well.

One response might be that a mention of "deceptive trade practices" in a clause headed "Price fixing" and referring to "antitrust" and "restraint of trade" may comprehend only a subset of all laws and regulations that carry the label "deceptive." The FTC is divided internally into a Bureau of Competition and a Bureau of Consumer Protection; both rely on powers granted by sec.5, but for different ends. Often the FTC uses sec.5 to supplement other antitrust laws, tying up loose ends. When it does this--usually though not always relying on the ban of "unfair methods of competition" that was enacted in 1914, rather than the power to proscribe "deceptive acts and practices" added in 1938--reviewing courts ask the questions normal in antitrust cases, such as whether the challenged practice reduced output and raised prices, and not simply whether it was "deceptive." See, e.g., California Dental Association v. FTC, 526 U.S. 756, 769-81 (1999). Perhaps the reference to "deceptive trade practices" in the policy's exclusion means in context the sort of "deceptive trade practices" that the FTC analyzes under antitrust standards. Cf. Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc., 43 F.3d 1119 (7th Cir. 1994) (an insurance policy covering "unfair competition" requires the insurer to defend a claim of false advertising and related fraud, but not an antitrust claim). This approach lays emphasis on the word "trade" as designating how businesses interact with their rivals, rather than with their customers. And if this is a potentially sensible reading of the exclusion, then the rule of insurance law resolving ambiguities in favor of policyholders, see Monfils v. Charles, 216 Wis. 2d 323, 329, 575 N.W.2d 728, 731 (Wis. App. 1998), becomes important. A normal policyholder--the benchmark in Wisconsin, see Kremers-Urban Co. v. American Employers Insurance Co., 119 Wis. 2d 722, 735, 351 N.W.2d 156, 164 (1984), whose law supplies the rule of decision--would not necessarily indulge the broader reading of a "deceptive trade

practices" exclusion embedded in a clause dealing with antitrust issues.

At oral argument we asked St. Paul's lawyer how she understood the phrase "deceptive trade practices." Eventually counsel defined the phrase as excluding from coverage all acts that entail nondisclosure of any sort, even if the nondisclosure has no effect on price (or on any other aspect of the transaction). This absurdly broad definition comprises the food and drug laws (omission of a dye from the list of ingredients on a box of oatmeal then would violate a "deceptive trade practice law") and most of the tort system--for medical malpractice and product-liability torts, among many others, can be characterized as liability for failure to disclose and obtain consumers' consent to one or another risk. If a real estate broker failed to disclose that the house was 50 miles from a fault line, or that it might be below the high water mark of a 1,000-year flood, this would violate a "deceptive trade practices law" on counsel's view. Yet the policy is designed in large measure to cover these risks of liability, as well as more immediate risks such as an employee's absconding with client funds (which could be characterized as failure to disclose that the employee was a thief). The policy explicitly excludes liability for violation of the securities laws, yet on counsel's view this is unnecessary: the securities laws address actual or constructive deception, so their full scope already would be excluded by the "deceptive trade practices" proviso.

RESPA is the principal federal statute regulating the activities of real estate brokers. The insurance policy at issue is limited to participants in the real estate business and directly addresses potential sources of liability for brokers. Would it not be weird--would it not be deceptive?--to exclude all coverage of RESPA in such a policy without mentioning RESPA by name or direct reference? The policy mentions and explicitly excludes coverage for violations of the antitrust laws, the securities laws, and ERISA, but it does not mention RESPA. Hiding a RESPA exclusion, surely an important element for any real estate dealer purchasing insurance to cover the risks of its

business, in a clause captioned "Price fixing" and sounding distinctly like an antitrust exclusion, would hoodwink all but the most suspicious customers. Wisconsin requires exclusions from coverage to be more straightforward, so that careful readers will know what they are buying. St. Paul's policy therefore must be read to cover unintentional violations of RESPA.

Reversed and Remanded