COURT OF APPEALS
DECISION
DATED AND FILED

August 22, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2147**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV115

IN COURT OF APPEALS
DISTRICT IV

JACOB W. BEEDLE,

PLAINTIFF-APPELLANT,

GROUP HEALTH COOPERATIVE OF EAU CLAIRE
AND WISCONSIN DEPARTMENT OF HEALTH SERVICES,

SUBROGATED PARTIES-PLAINTIFFS,

V.

WISCONSIN MUTUAL INSURANCE COMPANY,
JEFFREY C. PHILLIPS AND PIERCE J. PHILLIPS,

DEFENDANTS,

IMT INSURANCE COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Iowa County: MARGARET MARY KOEHLER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

¶1    BLANCHARD, J.    Jacob Beedle appeals a summary judgment dismissing IMT Insurance Company ("the insurer") from Beedle's suit against the insurer and its insured, Pierce Phillips ("the insured"), based on the circuit court's application of a business exclusion in a homeowner's insurance policy. While the insured and Beedle were constructing a pole barn together, Beedle was allegedly injured. Beedle alleges that his injury was caused by the insured's negligence. The insured was primarily employed by a company to construct such barns. However, the particular project that the insured was working on when Beedle was allegedly injured was a side job for the insured that was not part of his primary employment.

¶2    Beedle argues that the court erred in concluding that the business exclusion applies here to bar coverage for losses "arising out of or in connection with a business," the "business" being the insured's construction of pole barns. Beedle contends that, because the construction project was a side job for the insured and not part of his primary employment, it fell outside the policy's definition of "business." We disagree with Beedle and agree with the circuit court. We conclude that a reasonable insured in the position of the insured here would understand that the business exclusion applies to exclude coverage for claims arising out of the activity that the insured was engaged in at the time of the alleged injuries. Accordingly, we affirm.

**BACKGROUND**

¶3    The following facts are undisputed. The insured worked for Cleary Building Corporation as a foreperson in charge of a crew that constructed pole barns. He agreed to construct a pole barn on his uncle's farm. While this project

involved constructing a pole barn of the same type that the insured constructed in his work for Cleary, the project here was not undertaken pursuant to the insured's employment with Cleary. Instead, it was a side job for the insured.

¶4      Before work on the project began, the uncle and the insured agreed that the uncle would pay the insured for the work. However, they did not settle on the amount of payment until after construction was complete, when the uncle paid the insured at least $3,000.

¶5      Beedle, a member of the insured's crew at Cleary, offered to help on the project at the uncle's farm. Beedle was allegedly injured during the construction. Beedle filed this action against the insured, the insured's uncle, and their respective insurers, alleging in pertinent part that the insured's negligence caused Beedle's alleged injuries.

¶6      At the time of Beedle's alleged injuries, the insured had a homeowner's policy that includes coverage for "personal liability" and "medical payments to others," subject to various exclusions. At issue here is an exclusion for losses "arising out of or in connection with a 'business.'"[1]

---

[1] The business exclusion excludes the following:

> **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

> This Exclusion E.2 applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(continued)

¶7      The policy defines "business" in the following subdivision, using two paragraphs to describe alternative definitions that we now quote in pertinent part:

> **3.** "Business" means:
>
>> **a.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or
>>
>> **b.** Any other activity engaged in for money or other compensation, except the following:
>>
>>> **(1)** One or more activities, … for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period.

¶8      The insurer contested coverage under the policy.   The parties stipulated to bifurcating the action to address issues of coverage before determining liability.  After the parties conducted discovery, the insurer moved for declaratory judgment and summary judgment, arguing that the policy does not provide coverage.

¶9      The circuit court agreed with the insurer and, accordingly, granted both declaratory and summary judgments and dismissed the insurer from the case. The court based its decision on a test adopted by our supreme court to construe business exclusions in policies similar to the exclusion here.  *See **Bertler v. Employer Ins. of Wausau***, 86 Wis. 2d 13, 20-22, 271 N.W.2d 603 (1978) (reasonable insured would understand that any activity that an insured engages in with "continuity" and for a "profit motive" constitutes "a trade, profession or occupation" under a policy business exclusion).

Not pertinent to this appeal is Paragraph "b." of the business exclusion, which provides exceptions to the business exclusion.

¶10    Beedle appeals the order dismissing the insurer from the case. We provide additional facts as necessary below.

**DISCUSSION**

¶11    The parties agree that the dispositive issue in this appeal is whether, based on undisputed facts, the insured's work in constructing the barn for the uncle was part of "[a] trade" that the insured engaged in on at least an "occasional basis," and therefore the exclusion applies to bar coverage. There is no dispute that the insurer is entitled to summary judgment if the exclusion applies. The parties also agree that whether the business exclusion applies depends on interpretation and application of the policy's definition of the term "business."

¶12    We now briefly summarize the main arguments of the parties and explain why we agree with the insurer. Thereafter we provide applicable legal standards, address pertinent case law, and explain in more detail why we conclude that paragraph 3.a. of the policy unambiguously excludes coverage here and why we reject Beedle's contrary arguments.

¶13    The dispute here turns on whether the first paragraph of the definition of "business"—3.a.'s reference to "[a] trade, profession or occupation"—brings Beedle's claim against the insured within the scope of the business exclusion. The insurer does not argue that the alternative "other activity" definition of "business" in the second paragraph, 3.b., could provide the basis for summary judgment in its favor. However, the parties contest how a reasonable insured would understand paragraphs 3.a. and 3.b., when they are considered together.

¶14     The insurer argues that the only reasonable reading is that paragraph 3.a. applies to activities that constitute any trade, profession, or occupation that the insured at least occasionally engaged in, while 3.b. addresses activities that the insured has not engaged in even occasionally before the alleged injuries at issue and activities such as hobbies that are often not compensated or only nominally compensated.  Under this view, 3.a. applies to exclude coverage here, because there is no dispute that the insured at least occasionally engaged in the trade of pole barn construction and that this was the activity he was engaged in when the alleged injuries occurred.

¶15     In contrast, Beedle argues that one reasonable reading is that the exclusive domains of paragraphs 3.a. and 3.b. are defined by whether the insured's activity at issue is *primary employment* work of the insured or instead is a side job for the insured.  Under this reading, all primary employment work of an insured that might be excluded is addressed in 3.a. and all other work of any kind that might be excluded is addressed in 3.b.  As a result, the argument proceeds, "[a] trade, profession or occupation" must involve activities that are part of the insured's primary source of employment, and all "other activities" must involve non-primary employment.  Using this approach, Beedle argues that, because the project here was a side job for the insured, it is governed by 3.b. as work that constitutes "other activity."  If this is so, coverage could be excluded only if there is no genuine dispute that the insured made more than $2,000 on side jobs in the year leading up to the policy period.  *See* 3.b.(1) excluding from coverage "[o]ne or more activities, … for which no 'insured' receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period.").

¶16     For reasons we explain below, we reject Beedle's argument as an unreasonable reading of the definition of business in paragraph 3.a. of the policy.

A reasonable insured would understand that the activity that the insured was engaged in here unambiguously falls within the scope of the business exclusion as "engage[ment] in" "[a] trade," on an "occasional basis." Addressing Beedle's argument, we conclude that 3.a. is not affected by 3.b.'s exclusion of "other activities" and that our reading does not render 3.b. surplusage.

*Standard of Review And Legal Standards*

¶17 "We review a summary judgment pursuant to the same standards and methodology as the circuit court." ***American Family Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65. "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." ***Id.***; *see also* WIS. STAT. § 802.08(2) (2017-18). We also review de novo the interpretation and application of insurance policy terms to undisputed facts. *See* ***American Girl***, 268 Wis. 2d 16, ¶23. The insurer's parallel request for declaratory relief presents a question of law and turns on the same issue of how to interpret the insurance policy in light of relevant facts, and our review is independent. *See* ***Olson v. Farrar***, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1 (citing ***Bellile v. American Family Mut. Ins. Co.***, 2004 WI App 72, ¶6, 272 Wis. 2d 324, 679 N.W.2d 827).

¶18 We apply the following "well-established principles when interpreting an insurance policy":

> "An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it. The words of an insurance policy are given their common and ordinary meaning. Where the language of the policy is plain and

7

> unambiguous, we enforce it as written, without resort to rules of construction or principles in case law."

*Fontana Builders, Inc. v. Assurance Co. of Am.*, 2016 WI 52, ¶37, 369 Wis. 2d 495, 882 N.W.2d 398 (quoted source omitted). "Terms, words, or phrases in an insurance policy are ambiguous rather than plain if they are 'fairly susceptible to more than one reasonable interpretation.'" *Preisler v. General Cas. Ins. Co.*, 2014 WI 135, ¶19, 360 Wis. 2d 129, 857 N.W.2d 136 (quoted source omitted). We construe ambiguous language in favor of coverage. *Fontana Builders*, 369 Wis. 2d 495, ¶37.

*Paragraph 3.a. Of "Business" Definition*

¶19 Beedle acknowledges in his principal brief that the test adopted by our supreme court in *Bertler* "gives meaning" to the policy definition of "trade, profession or occupation," contained in paragraph 3.a. of the business definition.[2] In *Bertler*, our supreme court interpreted the scope of a "business pursuit" exclusion of liability coverage in a homeowner's policy, which defined "business" as "'a trade, profession or occupation.'" *Bertler*, 86 Wis. 2d at 20 (describing the

---

[2] In his reply brief, Beedle makes what appears to be an alternative argument that we reject. Beedle contends that *Bertler* and its progeny are distinguishable based on differences in language between the policy here and the policy discussed in *Bertler*. Specifically, he notes that the policy in *Bertler* excluded coverage for "'bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits.'" *State v. Bertler*, 86 Wis. 2d 13, 20, 271 N.W.2d 603 (1978) (quoted source omitted). The business exclusion here, to repeat, excluded "'bodily injury' or 'property damage' arising out of or in connection with a 'business' … engaged in by an insured." However, putting to the side the problem of Beedle's failure to raise this argument in his opening brief on appeal, Beedle fails to develop an argument that this difference distinguishes *Bertler*'s interpretation of "a trade, profession or occupation," the key phrase in the policy's definition of "business." Moreover, as we discuss in the text below, at least one other difference between the policy language here in paragraph 3.a. and in *Bertler* only reinforces our conclusion that coverage is excluded here. Similarly, as we also address in the text below, we disagree with Beedle that paragraph 3.b.—another feature of the policy here not present in *Bertler*—alters our reading of 3.a.

phrase "a trade, profession or occupation" as using "broad terms" and characterizing this phrase as being "typical" of "business pursuit" policy exclusions in homeowner policies). Interpreting this language, the court identified and applied a two-element test for determining whether an activity constitutes a business pursuit that is excluded. *Id.* at 20-22. We will call this the continuity-profit motive test.

¶20 The continuity element of the continuity-profit motive test is established when the activity is a "'stated occupation'" of the insured or the activity is a "'customary engagement'" for the insured. *Id.* at 21 (quoted source omitted). The profit motive element is established when the activity is a "'means of livelihood, gainful employment'" for the insured; is a means of "'earning a living'" for the insured; or is a means of "'procuring subsistence[,] profit, commercial transactions[,] or engagements'" for the insured. *Id.* (quoted source omitted).

¶21 The court explained in *Bertler* that the continuity-profit motive test is derived from an assessment of the "'understanding of the ordinary insured,'" based in part on dictionary definitions of "'[b]usiness,'" "'[p]ursuit,'" "'[t]rade,'" "'[p]rofession,'" and "'[o]ccupation.'" *Id.* at 20-22 (quoted source omitted). *Bertler* teaches that an ordinary insured would understand that homeowner's policies are intended "'to insure primarily within the personal sphere of the policyholder's life and to exclude coverage for hazards associated with regular income-producing activities.'" *Id.* at 19-20 (quoted source omitted).

¶22 With the *Bertler* continuity-profit motive test and its rationale in mind, we now provide additional facts here pertinent to its application in this case. We then explain why we reject Beedle's argument that one of this court's later

decisions applying ***Bertler*** supports his interpretation that ***Bertler*** distinguishes between primary employment and side jobs, and we further explain that at least one other feature of paragraph 3.a. reinforces our conclusion that ***Bertler*** applies here to preclude coverage.

¶23    The following is undisputed testimony given by the insured and his uncle in depositions regarding both the insured's side jobs (non-Cleary work) generally and his work on the specific construction project in which Beedle was allegedly injured.  The insured engaged in one to two side jobs per year, outside of his Cleary assignments.  He acknowledged that these side jobs were "basically related to [his] trade in construction," namely, constructing pole barns.

¶24    The uncle testified that, at some point before the insured began building the barn, the uncle and the insured discussed how much money the uncle would pay the insured for the work, but that no dollar amount was agreed to and the uncle paid the insured only after the barn was built.

¶25    The insured testified that he had a profit motive to engage in the side jobs, acknowledging that he did it to earn "a little extra cash" beyond what he earned in his primary employment.  The insured further testified, however, that he did not consider the project for his uncle to be a typical side job, suggesting that the difference from the typical side job was that he was merely helping out his uncle by taking on the project.  At the same time, however, the insured acknowledged that the uncle paid him at least $3,000 for the work.

¶26    With that additional background, we now explain why we conclude that the continuity and profit motive elements are met, satisfying the ***Bertler*** continuity-profit motive test.

¶27    Beginning with continuity, that element is clearly met once, as we now explain, it is understood that Beedle's focus on a distinction between primary employment and side jobs misses the mark.  Instead, what matters under the policy language is that the insured's primary employment and the side job here both consisted of pole barn construction.  Beedle argues that it was neither a "stated occupation" nor a "customary engagement" for the insured here to perform one to two side jobs per year consisting of pole barn construction, even if that work consisted of the same activity that the insured engaged in for Cleary.  Beedle relies on the proposition that, in assessing either means of establishing continuity, a reasonable insured would understand that only activity that an insured engaged in as part of primary employment fits the definition of "'business'" as a "trade, profession or occupation."  Thus, according to Beedle, the reasonable insured in the insured's situation would state that his or her occupation is work for Cleary, not building pole barns.  Similarly, Beedle would determine whether an insured "customarily" engaged in an activity as a side job by focusing exclusively on activities engaged in as side jobs and not on activities engaged in as primary employment.  However, as we now explain, Beedle fails to recognize broad statements in *Bertler* and subsequent case law that defeat his attempt to draw a sharp line between an activity engaged in as primary employment as opposed to a side job.

¶28    We have noted in a prior decision that *Bertler* characterized business exclusions using the formulation of "a trade, profession or occupation" as constituting "an 'expansive definition' of the word 'business.'"  ***Williams v. State Farm Fire and Cas. Co.***, 180 Wis. 2d 221, 229-30, 509 N.W.2d 294 (Ct. App. 1993) (quoting *Bertler*, 86 Wis. 2d at 20, 22).  Based on this, we made the broad statement that an insured's "'business need not be the [insured's] sole

occupation'" in order to trigger exclusion and that "'part-time business activities'" are also excluded under "'comprehensive personal liability policies.'" *Id.* at 230 (citing 7A J. APPLEMAN, INSURANCE LAW & PRACTICE § 4501.10 (1979)); *see also Rufener v. State Farm Fire & Cas. Co.*, 221 Wis. 2d 500, 506, 585 N.W.2d 696 (Ct. App. 1998) (concluding it was "of no importance" that an insured "worked full-time in another job," "because part-time businesses are businesses for the purposes of the exclusion, so long as they meet the requirements of the *Bertler* test").

¶29 Moreover, Beedle fails to support his assertion that the insured's role in constructing the pole barn here, ignoring the fact that he engaged in side jobs in his trade multiple times over a number of years, lacks "continuity" with the insured's construction of pole barns as his primary employment. The project here clearly continued the insured's primary employment activity. It is difficult for us to imagine a valid version of this argument. The insured himself accepted the characterization of his "trade" as being the "construction of the types of buildings similar" to the pole barn that he was constructing for the uncle. As the insured here appeared to recognize, one's "stated occupation" is reasonably defined by the nature of the activity in which one engages and not by making distinctions between activities performed for employers and those not performed for employers. We conclude that it is more than sufficient to meet the continuity element here that both in the project at issue and in his Cleary work the insured customarily engaged in the activity of building pole barns, regardless of his other side jobs, and that he understood that activity to be his occupation.

¶30 Regarding profit motive, Beedle makes a brief argument that focuses on the insured's side jobs and asserts that these provided "at most, a nominal supplement and not a means of livelihood." It is sufficient to reject this argument

that the insured acknowledged in his deposition that one of his motives in taking on side jobs was to make "a little extra cash." This fits within *Bertler*'s description of the profit motive element as being, in pertinent part, as "'a … means of … procuring … profit, commercial transactions or engagements.'" *See Bertler*, 86 Wis. 2d at 21 (quoted source omitted). And, after the insurer provides a supported argument that the insured was sufficiently motivated by profit to engage in this particular construction work, Beedle does not develop a counterargument.

¶31 In sum, we conclude that the continuity-profit motive test is met here. A reasonable insured would understand paragraph 3.a. to exclude coverage of Beedle's claim based on the language of "[a] trade, profession or occupation."

¶32 Beedle argues that our decision in *Monfils v. Charles*, 216 Wis. 2d 323, 575 N.W.2d 728 (Ct. App. 1998), supports his position that *Bertler*'s definition of the phrase "trade, profession and occupation" in paragraph 3.a. refers only to primary employment, and not to activity engaged in as a side job. In *Monfils*, a paper mill worker was sued for negligence allegedly arising from his capacity as president of a union, and not as a mill worker. *Id.* at 327. As Beedle emphasizes, in the course of determining that the insured's non-primary employment as union president did not trigger a policy business exclusion, we noted that the claim against the insured did not arise out of his "primary occupation" as a mill worker. *Id.* at 334.

¶33 However, *Monfils* does not state a categorical rule that a claim necessarily fails to meet *Bertler*'s continuity-profit motive test when the pertinent activity was outside the scope of the insured's primary occupation. Rather, applying the continuity-profit motive test, we determined in *Monfils* that the insured's activity outside his primary employment of serving as union president

did not meet the necessary elements to trigger the exclusion, based on case-specific facts involving the nature of the union presidency. *See id.* at 333-35 ("the necessity of re-election [as union president] and the existence of only intermittent duties together with the nominal compensation and the lack of a profit motive [were] insufficient to classify [the insured's] activities as a union president a 'business pursuit.'"). We noted that the insured had a "primary occupation" as a mill worker in *Monfils*, but only to highlight that his being a mill worker was a separate activity from his being a union president. Then we applied the continuity-profit motive test to his work as union president. *See id.* at 334-35. This contrasts with the instant case, in which, as we have explained, the insured engaged in pole barn construction both in his primary employment and in the barn project here (even putting aside other side jobs), which created a single, "continuous" activity.

¶34 We further note that one other aspect of paragraph 3.a. in the policy here, not addressed in the course of *Bertler*'s interpretation of the phrase "a trade, profession, or occupation," also points to the conclusion that a reasonable insured would understand that the policy here treats the pole barn construction in this case as a "business." Specifically, the policy here states that the "trade, profession or occupation" at issue qualifies as a business if "engaged in on a" merely "occasional basis," unlike the business definition addressed in *Bertler*, which did not speak in terms of merely "occasional" activity. *See Bertler*, 86 Wis. 2d at 21. On this frequency-of-activity topic, the *Bertler* continuity-profit motive test requires "customary engagement." Thus, the policy language here, if anything, sets a lower bar for insurers to clear than is established by the general continuity-profit motive test. There is no possible argument that pole barn construction

14

activity of the insured as a Cleary employee, even ignoring the side jobs generally, was not at least "occasional."

¶35    Beedle proposes a hypothetical that he contends illustrates the unreasonableness of reading the phrase "[a] trade, profession or occupation" to include activities that are not part of an insured's primary employment.  Beedle first posits an insured whose primary employment is as a plumber and who negligently destroys a home through plumbing as a side job.  He then posits the same plumber-insured destroying the same home, but this time by the means of negligently engaging in an *electrical* side job.  Beedle argues that, under the reading of "[a] trade, profession and occupation" that we apply here, coverage might well be excluded in the first instance, but not in the second, which he asserts is an illogical or absurd result.  We conclude that this hypothetical serves to illustrate that Beedle fails to come to grips with the teaching of **Bertler** about what a reasonable insured would understand about the purposes of a homeowner's policy.  As the insurer notes, coverage would be excluded if the hypothetical plumber-insured engaged in electrical work for compensation on a more than occasional basis.  Potential exclusion in both hypothetical situations is consistent with the logic underlying **Bertler**'s continuity-profit motive test, which is that the typical policy language puts insureds on notice that types of risk associated with certain activities engaged in by an insured are excluded as business pursuits.

¶36    In sum, applying **Bertler**'s continuity-profit motive test, we agree with the insurer that a reasonable insured in the shoes of the insured here would understand that, per paragraph 3.a., "[a] trade, profession or occupation" engaged in by an insured on an at least occasional basis results in the exclusion of coverage not only for losses arising out of the insured's primary employment with Cleary, but also for losses arising out of the side job in which the insured was engaging at

the time of the alleged injuries. We reject Beedle's contrary reading as unreasonably focused on primary employment, and accordingly we reject Beedle's argument that there is an ambiguity to be construed in favor of coverage. *See Preisler*, 360 Wis. 2d 129, ¶19 (parties' disagreement about the meaning of policy language does not necessarily render that language ambiguous; policy language must be susceptible to multiple reasonable interpretations).

*Paragraph 3.b. Of Policy's "Business" Definition*

¶37    Beedle contends that the insurer's reading of paragraph 3.a. fails to read the policy as a whole, specifically that it ignores paragraph 3.b. *See Connors v. Zurich Am. Ins. Co.*, 2015 WI App 89, ¶28, 365 Wis. 2d 528, 872 N.W.2d 109 (courts interpret insurance policy terms in the context of the policy as a whole). Specifically, Beedle argues that a reasonable insured reading 3.b. would understand that it "demonstrates [the insurer's] intent to limit 3.a. to the insured's primary trade, profession or occupation." Along similar lines, Beedle may also intend to argue that a broad reading of 3.a.'s "[a] trade, profession or occupation" would render 3.b.'s partial exclusion of "other activities" as "surplusage," a provision with no meaning or operative effect. *See id.* ("[C]onsistent with the rule that we interpret insurance policy language from the viewpoint of a reasonable insured, courts avoid interpreting policy language as though it adds nothing, as if it were 'mere surplusage.'") (quoted source omitted). For reasons we now explain, we reject Beedle's arguments that 3.b. alters the analysis of 3.a.

¶38    To explain why paragraph 3.b. does not alter our interpretation of paragraph 3.a., applying *Bertler*, and how that interpretation does not render 3.b. surplusage, we briefly address how these provisions interrelate. To repeat, paragraph 3.b. covers "[a]ny *other* activities … for compensation." (Emphasis

added.) That is 3.b. addresses activities "other" than those that constitute "[a] trade, profession or occupation engaged in" on at least an occasional basis. Further, as the insurer notes, 3.a. and 3.b. are separated by "or," with the result that an activity that falls under either 3.a. "or" 3.b. constitutes a "business." Thus, while both paragraphs can trigger the exclusion, 3.b. can do so only through activities that do not fit within 3.a. (or that do not fit within the exceptions to the exclusion not pertinent here).

¶39 Given the relationship between paragraphs 3.a. and 3.b., we see nothing in 3.b. that explicitly or implicitly limits our interpretation of 3.a. As the insurer observes, the separation of 3.a. and 3.b. with an "or" and the definition of 3.b. as activities "other" than those covered by 3.a. alerts the reasonable insured to the fact that these provisions are meant to define separate categories of "business": one category excluding coverage for "trade, profession or occupation" activities and another excluding "other activities," allowing coverage where the "other" activity leads to less than $2,000 in compensation during the year before the policy was in force.

¶40 Further, paragraph 3.b. retains meaning when paragraph 3.a. is read, consistent with *Bertler*, to focus on the nature of the activity engaged in by an insured and not on whether the activity is engaged in as primary employment. A reasonable insured would understand that an insured may engage in for-compensation activities that do not constitute a "trade, profession or occupation" or that do not occur on so much as an "occasional basis." One obvious example would be a for-compensation activity engaged in less often than "occasionally." Beedle does not address the "occasional basis" language of 3.a., and thus fails to come to grips with how it undermines his argument regarding 3.b.

17

¶41    Moreover, paragraph 3.b. can be triggered by any for-compensation activity that does not otherwise fit within a "trade, profession or occupation." The insurer points out that activities that are typically regarded as hobbies may be examples of such activities, because a hobby may involve earning compensation (*e.g.*, prize money), but is often engaged in for non-monetary reasons. Beedle fails to develop a non-conclusory counterargument.

¶42    Stepping back, we are not persuaded by Beedle's argument that making a distinction between primary and non-primary employment adds clarity to what he contends would be an otherwise indeterminate, and thus ambiguous, line separating the policy's alternative categories of "business." In his most general formulation of this argument, Beedle contends that 3.b. renders 3.a. ambiguous because, reading the two together, a reasonable insured would not understand where "a trade, profession or occupation" ends and where "any other activity engaged in for money or other compensation" begins.[3] As we have explained, however, 3.b.'s definition of activities that are for-compensation and "other" than those fitting within 3.a.'s "[a] trade, profession or occupation" is not ambiguous as applied here. It may be true that the policy here defines "business," and by extension its business exclusion, in a somewhat complicated way. But

_____

[3] Beedle appears to acknowledge, in the course of pursuing this ambiguous-line-between-categories argument, that Wisconsin Supreme Court precedent addressing a particular type of *exception* to business pursuits exclusions, which Beedle initially cites, is off point. At one point in his briefing, he cites *Vandenberg v. Continental Insurance Co.*, 2001 WI 85, 244 Wis. 2d 802, 628 N.W.2d 876. In *Vandenberg*, our supreme court concluded that an exception to a business exclusion for activities that, in the words of the policy, are "usual to non-business pursuits," was ambiguous when applied to the facts of that case. *Id.*, ¶¶14, 42. However, at other points in his briefing, Beedle acknowledges that cases such as *Vandenberg*, which analyze the "usual to non-business pursuits" exception, and not a definition of business as "a trade, profession or occupation," are distinguishable from cases like this, where the policy has no "usual to non-business pursuits" exception. We agree that these cases are readily distinguishable.

Beedle fails to identify a reasonable basis to conclude that the boundary between 3.a. and 3.b. is ambiguous for purposes of this case. *See **Stuart v. Weisflog's Showroom Gallery, Inc.***, 2008 WI 86, ¶20, 311 Wis. 2d 492, 753 N.W.2d 448 ("An otherwise unambiguous provision is not rendered ambiguous solely because it is difficult to apply the provision to the facts of a particular case.").

## CONCLUSION

¶43     For all of these reasons, we conclude that the business exclusion in the insured's policy applies to bar coverage for Beedle's claim arising out of the activity that the insured was engaged in at the time of the alleged injuries. Accordingly, we affirm the circuit court's grant of summary judgment.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.